No. 22-15827

# In the United States Court of Appeals for the Ninth Circuit

FELLOWSHIP OF CHRISTIAN ATHLETES, AN OKLAHOMA CORPORATION, ET AL.,
Plaintiffs-Appellants,

v.

SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,
Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Honorable Haywood S. Gilliam, Jr.

(4:20-cv-02798-HSG)

## REPLY BRIEF OF PLAINTIFFS-APPELLANTS

KIMBERLEE WOOD COLBY
CENTER FOR LAW & RELIGIOUS
  FREEDOM
8001 Braddock Road, Suite 302
Springfield, VA 22151
(703) 642-1070
*kcolby@clsnet.org*

CHRISTOPHER J. SCHWEICKERT
SETO WOOD & SCHWEICKERT LLP
2300 Contra Costa Boulevard
  Suite 310
Pleasant Hill, CA 94523
(925) 938-6100
*cjs@wcjuris.com*

DANIEL H. BLOMBERG
  *Counsel of Record*
ERIC S. BAXTER
NICHOLAS R. REAVES
ABIGAIL E. SMITH
JAMES J. KIM
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
*dblomberg@becketlaw.org*

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iii

INTRODUCTION .................................................................................... 1

ARGUMENT ........................................................................................... 2

I.   The District's Actions Violate the Equal Access Act. ....................... 2

   A. The District conflates EAA and First Amendment
      analyses. ................................................................................... 3

   B. The District is regulating FCA based on the
      content of its speech. ............................................................... 5

II.  The District's Actions Violate the Free Exercise
     Clause. .......................................................................................... 8

   A. The Free Exercise Clause provides distinct protection
      for religious exercise. .............................................................. 9

   B. The District's actions are not generally applicable. ................. 10

   C. The District's actions are not neutral. .................................... 14

III. The District's Actions Violate the Speech and
     Assembly Clauses. ...................................................................... 16

IV.  The District's Actions Violate the Religion Clauses. ..................... 19

V.   The Remaining Injunction Factors Favor Relief. ........................... 21

VI.  This Court Has Jurisdiction Over Plaintiff's Claims. .................... 23

   A. The record defeats Defendants' arguments. ............................. 23

   B. Defendants did not, and cannot, prove this case is
      moot. ...................................................................................... 27

   C. Plaintiffs have Article III standing. ........................................ 28

VII. The District Court Improperly Rejected
Supplemental Evidence ................................................................. 30

CONCLUSION ......................................................................................... 31

CERTIFICATE OF COMPLIANCE ....................................................... 32

CERTIFICATE OF SERVICE ................................................................. 33

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Delta Chi-Delta v. Reed*,
  648 F.3d 790 (9th Cir. 2011) ....................................................... 4, 8, 9

*Am. Beverage Ass'n v. City & Cnty. of S.F.*,
  916 F.3d 749 (9th Cir. 2019) ........................................................ 21-22

*Ariz. Students' Ass'n v. Ariz. Bd. of Regents*,
  824 F.3d 858 (9th Cir. 2016) .............................................................. 26

*Bd. of Educ. v. Mergens*,
  496 U.S. 226 (1990) ...................................................... 3, 8, 18, 22

*BLinC v. Univ. of Iowa*,
  2018 WL 4701879 (S.D. Iowa 2018) .................................................. 29

*BLinC v. Univ. of Iowa*,
  991 F.3d 969 (8th Cir. 2021) ............................................................... 9

*California Chamber v. Council for Educ.*,
  29 F.4th 468 (9th Cir. 2022) ............................................................... 2

*Christian Legal Sociey v. Martinez*,
  561 U.S. 661 (2010) ................................................................... *passim*

*Clark v. City of Lakewood*,
  259 F.3d 996 (9th Cir. 2001), *as amended* (Aug. 15, 2001) ............... 27

*Conlon v. InterVarsity Christian Fellowship*,
  777 F.3d 829 (6th Cir. 2015) ............................................................. 20

*Employment Division v. Smith*,
  561 U.S. 661 (2010) ............................................................................ 9

*Fortyune v. Am. Multi-Cinema*,
  364 F.3d 1075 (9th Cir. 2004) ......................................... 5, 21, 28, 29

*Friends of the Earth v. Laidlaw*,
  528 U.S. 167 (2000) ........................................................... 29

*Fulton v. City of Philadelphia*,
  141 S.Ct. 1868 (2021) ............................................. 10, 11, 12

*Gay-Straight All. v. Visalia Unified Sch.*,
  262 F.Supp.2d 1088 (E.D. Cal. 2001) .................................. 16

*Good News Club v. Milford Cent. Sch.*,
  533 U.S. 98, 109 (2001) ...................................................... 18

*Hosanna-Tabor v. EEOC*,
  565 U.S. 171 (2012) ........................................................... 20

*Hsu v. Roslyn Union Free Sch. Dist.*,
  85 F.3d 839 (2d Cir. 1996) ...................................... 7, 15, 17

*InterVarsity v. Univ. of Iowa*,
  5 F.4th 855 (8th Cir. 2021) ............................................... 13

*InterVarsity v. Wayne State Univ.*,
  534 F.Supp.3d 785 (E.D. Mich. 2021) ................... 9, 20, 21, 29

*Johnson v. Couturier*,
  572 F.3d 1067 (9th Cir. 2009) ............................................. 6

*Kennedy v. Bremerton Sch. Dist.*,
  142 S.Ct. 2407 (2022) ............................................. 10, 14, 15

*Koala v. Kholsa*,
  931 F.3d 887 (9th Cir. 2019) ............................................. 10

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .................................................... 28, 29

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................... 21

*Northeastern Fla. Chapter v. Jacksonville*,
  508 U.S. 656 (1993) ........................................................... 30

iv

*Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*,
470 F.3d 818 (9th Cir. 2006)............................................................27

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
140 S.Ct. 2049 (2020)...................................................................19

*Prince v. Jacoby*,
303 F.3d 1074 (9th Cir. 2002).........................................................3

*Reed v. Town of Gilbert*,
576 U.S. 155 (2015).......................................................................4

*Rosenberger v. Rector and Visitors*,
515 U.S. 819 (1995).....................................................................16

*San Francisco v. USCIS*,
944 F.3d 773 (9th Cir. 2019)..........................................................28

*Straights & Gays for Equal. v. Osseo Area Schools*,
471 F.3d 908 (8th Cir. 2006)..........................................................22

*Tandon v. Newsom*,
141 S.Ct. 1294 (2021).............................................................10, 12

*Thunder Studios v. Kazal*,
13 F.4th 736 (9th Cir. 2021) ............................................................2

*Trinity Lutheran Church of Columbia v. Comer*,
137 S.Ct. 2012 (2017).............................................................10, 30

*Truth v. Kent Sch. Dist.*,
542 F.3d 634 (9th Cir. 2008).................................................. *passim*

*United States v. Ortega*,
203 F.3d 675 (9th Cir. 2000)............................................................6

*Wild Wilderness v. Allen*,
871 F.3d 719 (9th Cir. 2017)..........................................................27

*Yamada v. Snipes*,
786 F.3d 1182 (9th Cir. 2015).........................................................27

**Other Authorities**

*Our Mr. GQ 2022 show was a success!*, Facebook (Apr. 9, 2022), https://bit.ly/3Ju7c2U ........................................................... 13

*Check out what a typical GQ show is like!*, Facebook (Feb. 2, 2022), https://bit.ly/3QaF0UH ........................................................... 13

# INTRODUCTION

The District has conceded or left uncontested everything this Court needs to restore FCA's equal access to recognized status. And the record shows FCA is eager to resume access as soon as an injunction is granted.

First, the District does not dispute that religious leadership is key to the expression of a religious group, nor that the evidence here shows this is particularly true for FCA. And the District admits that it is excluding FCA clubs "solely" because they require leaders to agree with their religious beliefs, including about what is "sinful." This speech-based regulation of FCA violates the Equal Access Act.

Second, the District admits it has authority to exempt its programs from the same nondiscrimination policies it uses to exclude FCA, allowing the programs to "segregate students" based on criteria such as race and sex. The District does not contest that it has exercised this authority for a "multitude" of its programs. This includes student activities under the umbrella of its ASB program such as athletic teams. And the District leaves uncontested that it allows secular clubs to require adherence to *their* views on "unworthy citizen[ship]" and "good moral character." Yet the District will not grant FCA the same solicitude. Such double standards are impermissible under the Free Exercise and Free Speech Clauses.

Finally, while the District claims it cannot detect even a "whiff of antireligious animus," it responds to a record reeking of hostility by asking

1

this Court to hold its nose. The District never disavows how school officials used government power to "take a united stance" against religious beliefs they deem "bullshit" and believers they see as "charlatans." Indeed, Defendants testified that this conduct was *consistent* with the District's policies. Such animus violates the Free Exercise and Free Speech Clauses.

This Court should enter an injunction and restore FCA's equal access.

## ARGUMENT

Under the abuse-of-discretion standard, the district court's "interpretation of the underlying legal principles" is "subject to de novo review[.]" *California Chamber v. Council for Educ.*, 29 F.4th 468, 475 (9th Cir. 2022). Constitutional facts are also reviewed de novo under an "independent examination of the whole record." *Thunder Studios v. Kazal*, 13 F.4th 736, 742 (9th Cir. 2021); Br.20-21. Since FCA seeks to restore the status quo at the time of its preliminary injunction filing—when it held recognized status and "received the same benefits … as any other Pioneer club," SER414—it need only show "serious questions going to the merits" to obtain relief. Br.23.

## I.    The District's Actions Violate the Equal Access Act.

The District concedes that it is subject to the Equal Access Act, and that "the only question" is whether the District is regulating FCA on "the basis of the religious … content of [its] speech." Opp.29. The District's arguments only confirm that it is regulating the religious content of

FCA's speech, by both targeting FCA's religious speech and forbidding FCA from having religious leadership. Br.23-31.

**A. The District conflates EAA and First Amendment analyses.**

The flaw running through the District's analysis is its effort to treat the EAA as coterminous with the First Amendment's protections for speech in limited public fora. That argument would render the EAA superfluous, and has been repeatedly rejected. Br.23-24 (collecting cases).

For instance, the District borrows from *Christian Legal Society v. Martinez* to argue that the EAA applies "only to government '*compul*[*sion*]'" and not "when the issue is a benefit like ASB recognition in a limited public forum." Opp.32 n.19 (quoting 561 U.S. 661, 681-83 & n.14 (2010)). But the Supreme Court has held that the EAA "establish[ed] a different standard from" the free-speech "limited public forum" standard, and warned that conflating them is "misleading." *Bd. of Educ. v. Mergens*, 496 U.S. 226, 242 (1990). Under the EAA, a speech-based denial of benefits like ASB recognition is impermissible. *Id.* at 247; *Prince v. Jacoby*, 303 F.3d 1074, 1090 (9th Cir. 2002).[1]

Likewise, the District conflates *Martinez*'s holding regarding *viewpoint* neutrality with the EAA's *content* neutrality standard. Opp.32. But

---

[1]  Defendants claim, for the first time, that ASB status does not include access to funding. Opp.6. They are wrong. 1-ER-29; 8-ER-1368–71.

the two are distinct, and *Martinez* doesn't say otherwise. Viewpoint discrimination generally requires a heightened showing that speech is being restricted to silence the "perspective of the speaker"; content discrimination merely asks whether speech is being regulated by "reference to [its] content." *Reed v. Town of Gilbert,* 576 U.S. 155, 168 (2015); Br.30 n.2.

Where EAA and First Amendment analyses overlap is their requirement of content neutrality. But the District gets that wrong too. Defendants rely heavily on dicta in a non-EAA case, *Alpha Delta Chi-Delta v. Reed*, 648 F.3d 790 (9th Cir. 2011), that has since been rejected. *Alpha Delta* indicated that content neutrality turned on whether the government had "the *purpose* of suppressing" speech. *Id.* at 801. Hence the District's argument here that its alleged lack of "animus" is dispositive. Opp.30. Setting aside that Defendants' animus is well established, the Supreme Court later clarified that content neutrality does not turn on "the government's benign motive, content-neutral justification, or lack of 'animus.'" *Town of Gilbert*, 576 U.S. at 165. Rather, a regulation is "content based" if it "applies to particular speech because of the topic discussed or idea or message expressed." *Id.* at 163. To the extent *Alpha Delta* suggested the contrary, it was wrong. Cardinal Newman Br. at 6-8 (collecting cases); McConnell Br. at 14-15 (same). The EAA was not meant to police school officials' motives; it was meant to protect private student clubs' speech.

4

### B. The District is regulating FCA based on the content of its speech.

The District is violating the EAA's content-neutrality rule. The District regulates FCA's leadership standards by reference to their religious content. Br.27-31. As the District confirmed, Defendants excluded FCA to prevent "families of faith who do not share FCA National's beliefs," including its religious beliefs on what is "sinful," from having to "sign a statement" agreeing with them. Opp.7. In practice, this means that FCA is out solely because of the *religious* principles it asks its leaders to affirm, while, for example, the Interact Club is in because it asks its leaders to agree to *non-religious* principles. Br.15; 4-ER-660–62. The District's regulation thus turns on the "idea or message expressed" by the group's speech, which is content discrimination. Br.30 n.2.

***Targeting.*** Nor is Defendants' discrimination in doubt, given their open religious hostility. FCA's student clubs in the District are the first to be derecognized for their leadership standards, the only ones still so derecognized, and the only ones subjected to an ongoing, years-long campaign of open discrimination. Br.9-12; 25-27. In response, the District asks this Court to ignore the undisputed and entirely unrepentant religious targeting that sidelined FCA. Opp.30. But a well-established pattern of discrimination is probative of future conduct and the need for prospective relief. Br.25-26 (collecting cases); *Fortyune v. Am. Multi-Cinema*, 364 F.3d 1075, 1081 (9th Cir. 2004). The EAA is not blind to context, and

this Court cannot be either.

The District's see-no-evil argument is also beside the point. The District employees responsible for club recognition ratified the prior misconduct as *consistent with District policy*, and affirmed Defendant Glasser's view that he is professionally bound to do it all over again. Br.18. And, of course, the District continued its targeting all last year, by (among other things) setting discriminatory hurdles for participating in Club Rush (Br.18, 54) and banning school employees from coordinating basic club activities with FCA staff. 1-FER-247–48 ¶¶ 8-12.

The District asks this Court to overlook other evidence of its religious targeting. It complains that incriminating quotes in the school newspaper—a school program controlled by District employees—are unreliable. *But see United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000) (self-inculpatory admissions by party opponent not hearsay); *Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (hearsay admissible when deciding preliminary injunction motion).[2] Defendants also neglect to mention Principal Espiritu's testimony that the reporters audio-recorded and accurately quoted him, 5-ER-826, while other quotes are captured in the

---

[2]  Defendants try to dodge precedent establishing admissibility at the preliminary injunction stage, relying solely on the "advanced" stage of the case. Opp.24. But the injunction motion was filed six months before discovery closed, and in that period several depositions were taken and thousands of pages of discovery were produced by Defendants. There will be plenty of evidence to meet summary judgment evidentiary standards; this appeal is rightly resolved under the preliminary injunction standard.

original emails sent by District employees. 10-ER-1912. Similarly, the District pretends that its harassment of FCA via its newspaper was limited to one bad actor. Opp.11 n.10. But District employees confirmed that the harassment took place in a variety of contexts and left FCA students visibly "embarrassed, harassed, and scared." 10-ER-1889; *accord* 10-ER-1892; 8-ER-1523.

Finally, the District strains to suggest Glasser didn't really mean it when he called FCA's beliefs "bullshit" and FCA students "collateral damage." Opp.11 n.11. But his letter speaks for itself, and Glasser's actions speak louder. He continued attacking FCA for months, sought to "ban FCA completely from campus," and confronted an FCA guest speaker in an effort to get him to leave campus. Br.11-12. And he promised to do it again absent an injunction. Br.18.

***Religious Leadership.*** The District's ban on religious leadership *as such* also necessarily regulates the content of FCA's religious speech. Br.27-30. In response, the District ignores decades of caselaw and undisputed evidence emphasizing the uniquely expressive role of religious leadership in a religious association. Br.28. The Second Circuit's holding that religious leadership is "essential to the expressive content" of a religious meeting has only grown more clearly correct over time. *Hsu v. Roslyn Union Free Sch. Dist.*, 85 F.3d 839, 848 (2d Cir. 1996); Br.28 (collecting cases).

Instead of engaging with these arguments, the District twists *Truth v.*

*Kent Sch. Dist.*, 542 F.3d 634 (9th Cir. 2008), wrongly claiming that *Truth*'s "conclusion" affirmed bans on religious "leadership requirements." Opp.31. But *Truth* said the opposite, emphasizing it was "only concerned with Truth's *general* membership" and was not opining on "impos[ing] a religious test for … *leadership* positions." 542 F.3d at 647. Indeed, this was precisely the way *Truth* avoided creating the "direct conflict" with the Second Circuit that the District now demands. Opp.32.

The district court's contrary ruling flips the EAA on its head. Congress enacted the EAA to combat "widespread discrimination against religious speech in public schools." *Mergens*, 496 U.S. at 239. But while other clubs may demand leaders adhere to virtually *any* animating purpose—political, ideological, moral, or otherwise—*religious* groups face uniquely damaging bans on *religious* leadership that prevent them from speaking "on equal terms." *Alpha Delta*, 648 F.3d at 806 (Ripple, J., concurring); Br.38-39; Campus Groups Br.11-13. That is a textbook EAA violation.

## II. The District's Actions Violate the Free Exercise Clause.

The District's exclusion of FCA violates the Free Exercise Clause because the District (1) retains broad discretion to make individualized exemptions from the policy imposed on FCA, (2) treats comparable secular activity more favorably than FCA, and (3) is specifically targeting FCA's beliefs. Br.32. The District's response confirms these violations. It acknowledges that it can choose to exempt favored programs from its

8

nondiscrimination policy, Opp.49-51, does not contest that it has exempted a "multitude" of such favored programs, *see* Br.34, and confirms that its motivation is preventing students from voluntarily agreeing with FCA's religious beliefs, Opp.7.

## A. The Free Exercise Clause provides distinct protection for religious exercise.

As with the EAA, the District starts its analysis with a category error, arguing "the proper free exercise framework" is set "within the limited-public-forum" analysis of Free Speech claims by groups seeking "a state subsidy." Opp.47-48. The only authority the District cites for this startling proposition is a short footnote in *Martinez*. Opp.48.

But this footnote cuts the other way. It says not a word about limited-public-forum requirements or subsidies. Opp.47. Rather, the footnote applied only the *Employment Division v. Smith* free-exercise standard. 561 U.S. at 697 n.27 (citing 494 U.S. 872 (1990)). And it said this standard was met not because of speech-fora rules, but because of the unusual "across-the-board all-comers policy" to which the parties stipulated. *Id*.

Like *Martinez*, both this Court and others consider speech and free-exercise analyses separately. *Alpha Delta*, 648 F.3d at 804; *BLinC v. Univ. of Iowa*, 991 F.3d 969, 986 (8th Cir. 2021); *id.* at 988 (Kobes, J., concurring); *InterVarsity v. Wayne State Univ.*, 534 F.Supp.3d 785, 827 (E.D. Mich. 2021). The "First Amendment doubly protects religious speech" not by reducing the two lines of defense into one, but by providing

independent protection against "regulat[ing] religion and suppress[ing] dissent." *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2421 (2022); *cf. Koala v. Kholsa*, 931 F.3d 887 (9th Cir. 2019) (analyzing club's Free Press and Free Speech claims independently).

The District's "subsidy" argument also runs squarely into contrary precedent. Opp.47. The Supreme Court has rejected this argument for "more than 50 years," repeatedly explaining that "the Free Exercise Clause protects against 'indirect coercion'"—including "the denial of or placing of conditions upon a benefit"—and "'not just outright prohibitions.'" *Trinity Lutheran Church v. Comer*, 137 S.Ct. 2012, 2022 (2017).

**B. The District's actions are not generally applicable.**

The District's opposition confirms that the District has discretion to make exceptions from its nondiscrimination policy, Opp.49-51, and it never disputes record evidence that it exercises its discretion for a "multitude" of District programs subject to the same nondiscrimination policy as the ASB program. Br.34. This proves a lack of general applicability under both *Fulton v. City of Philadelphia*, 141 S.Ct. 1868 (2021), and *Tandon v. Newsom*, 141 S.Ct. 1294 (2021).

***Discretion***. In response, the District claims FCA is governed by "entirely different legal rules." Opp.51. But the only relevant legal rule—the District's nondiscrimination policy—expressly governs *all* District programs and activities, *including* its ASB program that is excluding FCA.

8-ER-1485; 6-ER-1048; 4-ER-673; 9-ER-1724, 9-ER-1726. And the District admits that it has discretion under that policy to treat FCA "differently from the District's own programs." Opp.50. That violates *Fulton*. It also stands in sharp contrast to *Martinez*, where the all-comers policy was "[j]ust as" applicable to "professors … host[ing] classes" as it was to student-group recognition. 561 U.S. at 688.

Defendants cannot in any event escape scrutiny by gerrymandering policy labels. Courts must consider both the applicable legal regime *and* any conduct that "the [policy] did not regulate" which "pose[s] a similar hazard" to the government's claimed nondiscrimination interests. *Fulton*, 141 S.Ct. at 1877 (citation omitted); Br.44-45.

Next, the District claims it has not (yet) *exercised* its discretion to grant exceptions within the ASB forum. Opp.51. That is false, *see infra* at 12-14, and it is also irrelevant. Even where the discretion is unexercised, the existence of discretion to allow "individualized exemptions" triggers strict scrutiny. *Fulton*, 141 S.Ct. at 1876-80.

That holding also disposes of Defendant's argument that *Fulton* concerns only "unfettered" discretion that intentionally burdens religion. Opp.52. Even benign and "incidental[]" burdens, such as from some nondiscrimination policies, must be scrutinized where the government can choose to lift them for some secular beneficiaries. *Fulton*, 141 S.Ct. at 1876-80.

Finally, the District complains that FCA "decr[ies] as discriminatory" the distinctions the District makes on the basis of sex, gender, and race. Opp.41 n.25. Not so. FCA merely argues that the District, having admittedly reserved the authority to deviate from its nondiscrimination policy in those ways, must show it has a compelling reason why religious groups are not similarly "worthy of solicitude." *Fulton*, 141 S.Ct. at 1879; McConnell Br.8.

***Exemptions***. The District also leaves essentially uncontested that it has in fact *exercised* its discretion to grant a "multitude" of exceptions. *See* Br.34 (quoting 9-ER-1653). Under *Tandon*, this is conclusive. What matters is the governmental interest at issue, and the District's asserted nondiscrimination interests are vastly more burdened by the District's "multitude" of exemptions than by FCA. Br.8.

Defendants quibble, in a footnote, about whether programs like Girls Circle, the Latino Male Mentor Group, and Mr. GQ exclude based on sex, race, or ethnicity. Opp.41 n.26. But the record shows that they are, respectively, for "*female-identifying* students," for "*Latino male* students," and a "*male* pageant." Br.8 (emphases added). If the District simply means that there is no evidence other students applied and were rejected from these groups, that is irrelevant since it is also true of FCA. 10-ER-2022. Further, Defendants submitted evidence *confirming* exclusion, such as noting that there was a counterpart to Girls Circle known as Boys Circle, a "group for boys." SER418 ¶31. Regardless, the District admitted

12

that these kinds of access limitations are permissible under the equity policy, and exist in a "multitude" of District programs. 9-ER-1632, 1638–41, 1653.[3]

Finally, Defendants make exceptions for ASB entities. For instance, athletic teams "must be organized under the umbrella of the ASB," "have ASB accounts," and "be ASB approved[.]" SER418; 7-ER-1136–37 (same); *Truth*, 542 F.3d at 641 (listing "school sports" among comparable ASB clubs). The District's response is that its single-sex teams are required by "law." But the cited law merely *permits* single-sex teams, 4-ER-672, and only requires parity if the school *chooses* to field single-sex teams, which is why "Title-IX-made-me-do-it" defenses fail. *InterVarsity v. Univ. of Iowa*, 5 F.4th 855, 865 & n.2 (8th Cir. 2021) (university granting Title IX exemption for Greek groups triggered strict scrutiny). The single-sex *requirement* comes from the sports league the District chose to join. 4-ER-672.

Similarly, the District fails to show that Senior Women and the South Asian Club do not discriminate based on sex and race. It speculates that the clubs are not currently discriminating because they filed boilerplate forms, ignoring their hand-written statements of exclusion on those

---

[3] *See also* Leland High School, *Our Mr. GQ 2022 show was a success!*, Facebook (Apr. 9, 2022), https://bit.ly/3Ju7c2U; *and* Leland High School, *Check out what a typical GQ show is like!*, Facebook (Feb. 2, 2022), https://bit.ly/3QaF0UH.

forms. For FCA, Defendants *condemned* without investigation; for other clubs, they *bless* without investigation. Such bespoke enforcement is not generally applicable.

So too for Big Sisters/Little Sisters, which Espiritu testified "was approved because it was … a mentorship for our freshman students who are females to be mentored by … senior female students." 5-ER-852–53. Espiritu didn't investigate the club or demand it change its constitution, *id.*, and it would have been hard to do so while praising the Latino Male Mentor Group. Br.16.

### C. The District's actions are not neutral.

It is undisputed that "the District sought to restrict [FCA's] actions at least in part because of their religious character." *Kennedy*, 142 S.Ct. 2422-23. Indeed, the District confirmed its purpose: preventing "families of faith who do not share FCA National's beliefs" from having to agree with FCA about what is "sinful." Opp.7. The District doesn't have this concern when secular groups require agreement with their views on being an "unworthy citizen" or having "good moral character." Br.14-15. Its concern is that FCA's principles are *religious*. Prohibiting FCA's "religious practice was thus the District's unquestioned 'object,'" rendering it non-neutral. *Kennedy*, 142 S.Ct. at 2023.

As shown above, and despite the District's implausible inability to detect even a "whiff of antireligious animus," Opp.53, the record reveals

many different District employees openly attacking FCA's religious beliefs. The District in response claims these employees had "no decision-making authority" and their statements did not "in any way inform[], let alone dictate[], the District's decisions." Opp.53-54. Not so. Principal Espiritu, made the "final call" on recognition, and his contemporaneous public explanation was that *both* the "District" and the "Climate Committee" (which included other hostile school officials) advised on the decision. 6-ER-1008 (newspaper report quoting Espiritu); 6-ER-1053 (Espiritu testimony confirming accuracy of quote).[4] He also allowed Pioneer staff to influence his enforcement, both in the rushed initial derecognition and later. 10-ER-1912; 10-ER-1919–20; 4-ER-639.

With nowhere else to go, the District retreats to offensive accusations of "invidious discrimination." As its willingness to "segregate students" demonstrates, Opp.40, the District obviously does not believe all forms of "discrimination" based on sex, gender, or race are "invidious." Opp.52; *accord Hsu*, 85 F.3d at 871. That the District only slapped that label on private religious groups further shows its hostility. This substantial evidence of animus is sufficient to rule for FCA without even reaching strict scrutiny. *Kennedy*, 142 S.Ct. at 2422.

---

[4] Defendants incorrectly state they consulted FCA before derecognition. *See* 8-ER-1397; 1-FER-112.

## III. The District's Actions Violate the Speech and Assembly Clauses.

The District's policies impose unreasonable content-based limitations and discriminate on the basis of religious viewpoint. Br.47.

***Reasonableness****.* The District's forum policy is unreasonable because it does not "respect the lawful boundaries it has itself set," *Rosenberger v. Rector and Visitors*, 515 U.S. 819, 829-30 (1995), as it protects other students' controversial speech, Br.48, but not FCA's.[5] *See* 10-ER-1833 (district policies protecting "controversial or unpopular" speech). Rather than responding to this contention, the District insists the policy is controlled by *Martinez*. Opp.35-37. But *Martinez* assumed, based on the parties' stipulation, that every student organization truly accepted all comers—*i.e.*, the Hastings Democrats had to accept Republicans and vice-versa. 561 U.S. at 675. That's not remotely true here, where the District's policy allows case-by-case "common sense" exceptions for "nondiscriminatory" exclusions. Br.14; Opp.45 (admitting there is no "comprehensive list" of non-discriminatory criteria and "school officials" apply the policy

---

[5] The District claims FCA National has no relevant speech rights (Opp.33-34), ignoring that FCA National is challenging both the District's unlawful speech restrictions *on behalf of* its affiliated student members and the District's exclusion of FCA and its affiliated clubs. *E.g., Gay-Straight All. v. Visalia Unified Sch.*, 262 F.Supp.2d 1088, 1103 (E.D. Cal. 2001) (national GSA Network had standing). Regardless, Pioneer FCA is also a party to this appeal.

based on "examples" and a "guiding principle"); *accord* 9-ER-1739–40; 7-ER-1202; 7-ER-1249.

To get around this, the District remarkably claims its policies advance the "speech-promoting purposes of the ASB program" and make students "work together." Opp.36. But *excluding* a religious student club because of its sincere religious beliefs and then supporting coordinated protests does not promote those goals. Jewish Coalition Br.8.[6]

That the District must strain so hard to find plausible explanations for its forum limitations is indicative of an underlying problem: the District admitted below that the limitations don't actually exist in any written policy. SER21. Instead, the District just relies on self-serving, *post hoc* testimony by District officials. *Id.* That is the very definition of a standardless, unreasonable policy.

***Viewpoint discrimination***. The District argues that allowing ASB clubs to exclude based on "nondiscriminatory criteria" is "no different from the policy in *Martinez*." Br.44. But *Martinez*'s "across-the-board open-access" rules permitted only basic objective limitations, like dues

---

[6] Defendants suggest groups can secretly vote for candidates based on "agree[ment] with their religious beliefs." Opp.37. That suggestion only hurts Defendants by showing how thin their interests are; they "cannot have it both ways." *Hsu*, 85 F.3d at 861. Defendants are also wrong. A student can complain about such voting, which would be resolved under the same nondiscrimination policies that led to FCA's derecognition. 9-ER-1761–62.

and attendance, and applied beyond student clubs to even how "professors … host[ed] classes." 561 U.S. at 671, 688 & n.2. By sharp contrast, the District's "nondiscriminatory criteria" exception undisputedly allows clubs broad subjective discretion to assess someone's "good moral character," "leadership," "service," and "worthy citizen[ship]." Br.14-15; *Mergens*, 496 U.S. at 258 (listing similar NHS standards). And the District allows its staff to host multitudes of programs "open only to those students with a certain status[.]" *Martinez*, 561 U.S. at 688; *supra* at 12-14.

The District next claims that the alleged "purpose" of its "nondiscrimination policy" isn't to suppress particular viewpoints, and that this is "dispositive." Opp.43. Not so. For instance, it has been "quite clear" for decades now that allowing secular "character" views but banning religious ones is viewpoint discrimination. Br.51 (quoting *Good News Club v. Milford Cent. Sch.,* 533 U.S. 98, 109 (2001)). Further, the evidence shows Defendants have selectively enforced their policy against FCA based on hostility to its views, which is also viewpoint discrimination. *Supra* 14-15; Br.51-52.

Evidence of this hostility comes through in a key part of the District's arguments. The District constantly toggles between describing its policy as a new all-comers policy, Opp.45, or as a preexisting nondiscrimination policy, Opp.37. When trying to evade comparison of the ASB program to other District programs, it is an all-comers policy, Opp.41-42; but when trying to explain away obvious exceptions, such as the discretionary

"common-sense" "nondiscriminatory criteria" loophole that allows the National Honor Society to exclude students based on its views of character, it becomes a run-of-the-mill nondiscrimination policy, Opp.40, 44-45. The need for constant shifting at the heart of the District's defense is itself indicative of pretext.

Finally, the District engages in fearmongering, suggesting that "one girls' sports team" would automatically require the District to allow religious clubs to engage in race discrimination. Opp.42 n.27. This is an odd concern to raise in a District that excludes students based on race and sex in a "multitude" of programs. The District cannot argue that the benefits flowing from, for example, the "Mr. GQ" pageant outweigh the First Amendment rights of religious students. Br.39. But in any event, if the District's imagined horribles ever actually start parading, a school can always defend its actions under strict scrutiny—which Defendants conspicuously refuse to do here.

## IV. The District's Actions Violate the Religion Clauses.

By banning FCA from confirming that its leaders hold *any* "belief in Christianity," 9-ER-1751, the District violates the Religion Clauses' protections for religious groups' "internal management decisions." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060 (2020).

Once again, the District's first response is to collapse the Religion Clauses into *Martinez*'s limited-public-forum speech analysis. But the Supreme Court unanimously rejected a similar argument as impossible

"to square with the text of the First Amendment itself, which gives special solicitude to the rights of religious organizations." *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 189 (2012) (rejecting attempt to reduce Religion Clauses to free-association protections).

The District also claims Pioneer FCA is not a protected religious organization because it is a student club. But "an institution need not be a church, diocese, or synagogue" to enjoy religious autonomy; it need only "be marked by clear or obvious religious characteristics." *Conlon v. Inter-Varsity Christian Fellowship*, 777 F.3d 829, 833 (6th Cir. 2015) (campus ministry protected; collecting cases protecting schools, nursing homes, hospitals). Pioneer FCA has an overtly religious name and mission—"to lead every coach and athlete into a growing relationship with Jesus Christ and his Church"—and is affiliated with a larger and just as openly religious organization in FCA. 10-ER-2017. Those "clear and obvious" characteristics show it is a religious organization.

Finally, the District again returns to its "subsidy" argument, long rejected under the Free Exercise Clause. *Supra* 10. *Wayne State* likewise rejected it, concluding that "[n]o religious group can constitutionally be made an outsider, excluded from equal access to public or university life, simply because it insists on religious leaders who believe in its cause." 534 F.Supp.3d at 812. The District wrongly cabins *Wayne State* to penalties like expulsion and lack of meeting space, Opp.55, but the court's

analysis independently rejected the "subsidy" argument in addition to other such penalties. 534 F.Supp.3d at 812.

## V. The Remaining Injunction Factors Favor Relief.

*Irreparable Injury.* Loss of First Amendment and EAA rights is irreparable harm. 1-ER-20; Br.58. Defendants do not contest this point, instead vaguely claiming that FCA has not shown an imminent injury. Opp.28. But Defendants *agree* that without a court order, Pioneer FCA will remain ineligible for ASB approval come September, when the deadline for students to obtain ASB approval comes and goes. Opp.46 n.30; Dkt.5 at 2. The record confirms that Pioneer FCA is categorically ineligible for ASB approval solely because of its religious beliefs, and that otherwise Plaintiffs would apply for ASB approval. *Infra* 25-26. This imminent loss of First Amendment rights is undoubtedly an irreparable injury. And the District's long history of hostility to Pioneer FCA and its student leaders is further evidence of the immediate threat of repeated injury. *See Fortyune*, 364 F.3d at 1081 ("past wrongs" support likelihood of future injury).

*Other equitable factors.* Here, the balance of equities and the public interest factors "merge" because the District is a government entity. *Nken v. Holder*, 556 U.S. 418, 435 (2009). And the fact that FCA has "raised serious First Amendment questions" alone "compels a finding that the balance of hardships tips sharply in [FCA's] favor." *Am. Beverage Ass'n v. City & Cnty. of S.F.*, 916 F.3d 749, 758 (9th Cir. 2019) (cleaned

up). As this Court has held, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* So too for EAA claims. *Straights & Gays for Equal. v. Osseo Area Schools*, 471 F.3d 908, 913 (8th Cir. 2006).

Defendants' contrary arguments ignore that Pioneer FCA was recognized on campus for years, was recognized and given "the same benefits during the 2020-21 school year as any other Pioneer club," SER414, and that none of Defendants' concerns regarding the exclusion of LGBTQ students have *ever* occurred. 6-ER-910. They also fail to account for the way their actions have crushed FCA clubs and intimidated minor students under their control. 10-ER-2021; 2-ER-71.

Finally, Defendants are wrong that merely recognizing a student club puts the school's "imprimatur" on it. Opp.57. The District's own ASB guidelines, and decades of caselaw, reject this very argument. 4-ER-702; *Mergens*, 496 U.S. at 248. Defendants selectively reject it as well, such as when they argue they weren't responsible for conferring ASB approval on a club formed to mock FCA, The Satanic Temple Club, because they have "no authority to refuse to recognize 'controversial' groups." Opp.14 n.13. In any event, the District told the district court that it is comfortable putting its "imprimatur" on District programs excluding students based on their race, sex, and ethnicity. SJUSD Br.19, ECF 111. The District's discriminatory discomfort with FCA, and ever-shifting rationales, yet again shows a religious animus that the balance of equities cannot favor.

## VI.   This Court Has Jurisdiction Over Plaintiffs' Claims.

Defendants' justiciability arguments fail in at least three independent ways. *First*, each justiciability argument relies on the claim that there is no evidence any current student would seek ASB approval for Pioneer FCA. This is false. *Second*, Defendants point to alleged developments *after* the filing of the complaint to argue this Court lacks jurisdiction; all of these arguments must be analyzed under the rubric of mootness, not standing, and Defendants cannot hope to carry this heavy burden. *Finally*, Plaintiffs plainly have standing.

### A. The record defeats Defendants' arguments.

Each of Defendants' justiciability arguments hinges on the same claim, which Defendants repeat at least *eight* times: that Plaintiffs have supposedly failed "to demonstrate that any students intend to apply for ASB recognition." Opp.22. Defendants claim this argument undermines injury in fact (Opp.21), defeats redressability (Opp.23), rebuts the futility argument (Opp.24), disproves an analogy to *Truth* (Opp.23 n.16), counters the stigma argument (Opp.25), and confirms that this case is moot (Opp.27-28). But the record shows the opposite: Pioneer FCA has current student leaders, cannot apply for ASB approval because of the District's all-comers policy, and would immediately apply for ASB approval if this policy were enjoined.

*First*, the record confirms that Plaintiff Pioneer FCA has student leaders. 2-ER-55 ¶8 (N.M. and B.C. leaders for 2022-23 school year); 2-ER-

71, 3-ER-419 ¶7 (N.M. president for 2021-22 school year); 2-FER-311, 2-FER-314, 2-FER-315, 2-FER-336–337. And both of Pioneer FCA's upcoming student leaders for the 2022-23 school year have submitted student leader applications. 2-ER-55 ¶4; 2-ER-59–70 (B.C. application); 1-FER-265–74 (N.M. application). *See also* 2-ER-56 ¶13; 3-ER-419 ¶7.[7]

*Second*, there is no mystery why the student leaders of Pioneer FCA did not apply for ASB approval in September 2021 and cannot apply in September 2022 without an injunction: the District made it impossible. The District devised a new-for-2021 ASB application process requiring student clubs to affirm they will not ask leaders to agree with their club's religious beliefs. Opp.13. This brand-new process intentionally outlaws FCA's longstanding religious leadership criteria. 2-FER-370; 4-ER-648 ¶14-15. Defendants do not dispute this conflict, Opp.46 n.30, nor that they engineered the application process precisely to exclude FCA. Br. 13-14, 25. That is why Pioneer FCA couldn't complete the ASB application last year and cannot re-apply this year. 2-FER-370; 4-ER-648 ¶14-15; Students Br. 19.

---

[7] Defendants complain that Pioneer FCA has had different leaders and members. Opp.25. That is of course the nature of a club run by minors, even in the best of times. And this was not the best of times, given the hostility from school officials and peers. 4-ER-647 ¶8-9. That Defendants make this complaint at all is tin-eared, and doubly so since they knowingly intimidated the freshman girl who initially volunteered to lead Pioneer FCA last year, subjecting her to discriminatory hurdles no other club leader faced. 3-ER-421–22 ¶¶17, 19.

*Third*, the record confirms that "*Pioneer FCA's leadership will apply for ASB recognition*," "[i]f the Court grants an injunction allowing Pioneer FCA to have equal access to ASB recognition without having to give up its religious leadership standards[.]" 4-ER-649 ¶19 (emphasis added); *see also* 10-ER-2024; 4-ER-648–49; 2-FER-311 (¶¶28-29), 2-FER-314 (¶47) 2-FER-320 (¶¶72, 74); 2-FER-370–71 (forward looking relief essential); 4-ER-647 ¶5 (FCA will open ASB account if recognized).[8] And Pioneer FCA is prepared to take that step as soon as it is able. SER74 ("apply[ing] for ASB recognition" has "been their plan as student [FCA] leaders since the club has been de-recognized.").

Indeed, despite being denied ASB approval and facing stigma for associating with FCA, 4-ER-649 ¶17-18, the student leaders and members of Pioneer FCA met seven times during the 2021-22 school year and plan to continue meeting on campus this fall. *See* 2-ER-56 (spring meetings); 3-ER-420 (fall meetings). And the record confirms Pioneer FCA wants ASB approval because it is "extremely important" to having a "successful, healthy student group" and reducing the "stigma" of being an outsider. 10-ER-2022 ¶¶30, 31; 4-ER-647–48 ¶¶5, 10, 11; 2-FER-329–331 ¶¶110-

---

[8] Defendants take issue with the testimony of FCA employee Rigo Lopez, but do not and cannot dispute that Pioneer FCA, an unincorporated association, designated Mr. Lopez to speak on the organization's behalf. 1-FER-206 ¶11; SER359 ¶5. And, despite deposing Mr. Lopez for 14.5 hours, Defendants have no evidence showing that he is not a competent or reliable fact witness.

16, 2-FER-338 ¶147; 2-FER-380–81 ¶¶6-12. That is far more than what *Truth* found proved standing. 542 F.3d at 639 ("indicat[ion]" student "is prepared to assume leadership of the club if the charter is approved" sufficient).

Defendants do not come forward with any contrary evidence. They simply repeat their mantra that "Plaintiffs submitted *no students' testimony*" to support standing. Opp.25 (emphasis original). But Defendants do not get to pick and choose which competent evidence this Court can rely on to confirm jurisdiction. Nor can Defendants feign ignorance as to why there is no current student testimony. During discovery, Defendants threatened to depose any minor student who was identified as a leader of Pioneer FCA and who submitted a declaration in support of the club. IPA.Supp.APP811; Students Br.7. Defendants even rejected Plaintiffs' offer of a 30(b)(6) witness for Pioneer FCA. Defendants' insistence on "*students' testimony*" illustrates the "inherent power asymmetry" in this case, which Defendants have abused to "chill and discourage" FCA students from "exercising [their] free-speech rights." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 869 (9th Cir. 2016).

Thus, the factual predicate for all of Defendants' jurisdictional arguments is wrong.

**B. Defendants did not, and cannot, prove this case is moot.**

Defendants' legal arguments fare no better. "Standing is determined by the facts that exist at the time the complaint is filed. Mootness inquiries, however, require courts to look to changing circumstances that arise after the complaint is filed." *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001), *as amended* (Aug. 15, 2001). Thus, the requirement to show standing at each stage of the case, *see* Opp.20, still requires measuring standing *at the time the complaint was filed. Yamada v. Snipes*, 786 F.3d 1182, 1203-04 (9th Cir. 2015). Here, Defendants argue that factual developments *after the complaint was filed* suggest the case is no longer live. *See* Opp.29, 32; IPA.Reply 11. Defendants' jurisdictional arguments therefore go only to mootness.

When analyzing mootness, "the question is not whether the precise relief sought at the time the application for an injunction was filed is still available. The question is whether there can be *any* effective relief." *Or. Nat. Res. Council v. U.S. Bureau of Land Mgmt.*, 470 F.3d 818, 820 (9th Cir. 2006). This burden of proof is on the party asserting mootness. *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017).

Defendants fail to meet this high standard. The record confirms that Pioneer FCA has current student leaders and who would seek ASB approval but for the District's exclusionary ASB policies. *Supra* 23-25. And, as explained further below, there are several forms of effective relief this Court could provide to address Pioneer FCA's injury. *Infra* 29-30. This

case is not moot, and that fact alone is sufficient to dispose of all Defendants' jurisdictional arguments.

### C. Plaintiffs have Article III standing.

Even analyzed under the rubric of standing, Plaintiffs have shown that this case is live and justiciable.[9]

***Injury in fact.*** When a private plaintiff is "challenging the legality of government action" and is "an object of the action," there is "little question" injury-in-fact has been shown. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And this Court has already held that when a school district has "written non-discrimination policies" requiring "den[ial] of ASB recognition" to the plaintiff student club, "there is an implicit likelihood of [the harm's] repetition in the immediate future" sufficient for forward-looking relief. *Truth*, 542 F.3d at 642; *Fortyune,* 364 F.3d at 1081 (similar). Injury in fact is also particularly straightforward at the preliminary injunction stage, requiring "only … a *risk* or *threat* of injury." *San Francisco v. USCIS*, 944 F.3d 773, 787 (9th Cir. 2019).

This standard is easily met. Defendants have a written all-comers policy that renders "FCA clubs ineligible for ASB recognition," Opp.8, 6-ER-

---

[9]  The same arguments also confirm FCA National has standing. It is undisputed that two Pioneer student applied and were approved to be FCA National student representatives. FCA National thus has standing both in its own right and as a representative of these students. Defendants completely ignore these points.

1049–50; issued written guidelines stating "ASB recognized status will not be granted to any student organization that restricts eligibility for … leadership" on "religious" grounds, 4-ER-703; and testified that FCA cannot be ASB approved due to its existing religious leadership requirements, Opp.46 n.30, 6-ER-911. *And* they have twice denied ASB status to Pioneer FCA for this reason. 10-ER-1510–11. The District's "ongoing policy coupled with [FCA's] past injury establishes a 'real and immediate threat' of … injury occurring again," showing standing for injunctive relief. *Fortyune*, 364 F.3d at 1082.

**Fairly traceable**. Defendants do not (and cannot) contest that "the harm [from ASB denial] is traceable to the District's policies," *Truth*, 542 F.3d at 642; Opp.8 (derecognition "solely" due to District policy).

**Redressable**. Plaintiffs need only show "it is likely, as opposed to merely speculative, that [their] injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw*, 528 U.S. 167, 180-81 (2000). Because Plaintiffs are the object of Defendants' actions, there is "little question" that "a judgment preventing" that harm confirms redressability. *Lujan*, 504 U.S. at 561-62. There are at least two straightforward ways in which injunctive relief could redress Plaintiffs' harms. This Court could issue an injunction requiring the District to restore Pioneer FCA's ASB-approved status. *BLinC v. Univ. of Iowa*, 2018 WL 4701879, at *14 (S.D. Iowa 2018) (preliminary injunction); *Wayne State*, 534 F.Supp.3d 785 (permanent injunction). Or this Court could enjoin the

District from conditioning FCA's ability to receive ASB recognition on relinquishing its religious leadership standards. *Trinity Lutheran*, 137 S. Ct. at 2022 (citing *Northeastern Fla. Chapter v. Jacksonville*, 508 U.S. 656, 666 (1993) (the redressable injury is "inability to compete on an equal footing in the bidding process," not just "the loss of a contract")).

## VII. The District Court Improperly Rejected Supplemental Evidence.

The district court erred in excluding, without explanation, supplemental evidence that only became available after the injunction briefing was complete. Br.60-62. The excluded evidence was highly relevant. Deposition transcripts revealed that the District never investigated Pioneer employees' misconduct despite having a legal duty to do so and despite assuring the California Department of Education that it would investigate. The transcripts also confirmed that Glasser instigated Defendants' actions against FCA, will resume mistreating FCA, and that the District affirmed this all as consistent with its policy. And the excluded Lopez declaration confirmed that Pioneer FCA met twice in May 2022 and continued to face discriminatory surveillance, rebutting Defendants' contradictory assertions that the club no longer exists *and* that it was being treated equally. SJUSD Br.5, 9, ECF 111.

The District's response yet again runs into its own arguments. Defendants argue that this Court should ignore the evidence filed to supplement the preliminary injunction record. But then they *repeatedly* cite to (and

supplement the appellate record with) reams of evidence filed in support of their motion to dismiss, which is not part of this appeal and was not filed until after the preliminary injunction was briefed, and which the district court chose not to consider in resolving the injunction motion pending before this Court. SER20. Defendants can't have it both ways.

## CONCLUSION

The Court should reverse the district court and remand the case with instructions to enter FCA's requested injunction.

Respectfully submitted,

*/s/ Daniel H. Blomberg*

KIMBERLEE WOOD COLBY
CENTER FOR LAW & RELIGIOUS
  FREEDOM
8001 Braddock Road, Suite 302
Springfield, VA 22151
(703) 642-1070
*kcolby@clsnet.org*

CHRISTOPHER J. SCHWEICKERT
SETO WOOD & SCHWEICKERT LLP
2300 Contra Costa Boulevard
  Suite 310
Pleasant Hill, CA 94523
(925) 938-6100
*cjs@wcjuris.com*

DANIEL H. BLOMBERG
  C*ounsel of Record*
ERIC S. BAXTER
NICHOLAS R. REAVES
ABIGAIL E. SMITH
JAMES J. KIM
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
*dblomberg@becketlaw.org*

31

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the length limits permitted by Ninth Circuit Rule 32-1. The brief is 6,985 words, excluding the portions exempted by Fed. R. App. P. 32(f). The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).


*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on August 1, 2022. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg