No. 22-15827

_____

## IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
_____

FELLOWSHIP OF CHRISTIAN ATHLETES, AN OKLAHOMA CORPORATION, ET AL.,

Plaintiffs-Appellants,

v.

SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

Defendants-Appellees,

_____

Appeal from the United States District Court
For the Northern District of California
Honorable Haywood S. Gilliam, Jr.
(4:20-cv-02798-HSG)

_____

## DEFENDANTS-APPELLANTS'
## PETITION FOR REHEARING OR
## REHEARING EN BANC
_____

Amy R. Levine
alevine@DWKesq.com
Dannis Woliver Kelley
200 California Street, Suite 400
San Francisco, CA 94111
Telephone: (415) 543-4111

Richard B. Katskee
katskee@au.org
Kenneth D. Upton, Jr.
upton@au.org
Americans United for Separation of
Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234

Stephen P. Berzon
sberzon@altber.com
Stacey M. Leyton
sleyton@altber.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151

_____

*Attorneys for Defendants-Appellees*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................... iii

REASONS FOR REHEARING ............................................................... 1

BACKGROUND ....................................................................................... 3

ARGUMENT ............................................................................................. 4

   I.   The majority's determination that Plaintiffs had established standing to seek prospective relief contradicts decisions of this Court and the U.S. Supreme Court ........................................................................ 4

   II.   The majority's irreparable injury holding contravenes U.S. Supreme Court precedent ............................................................................. 7

   III.   The majority's selective enforcement analysis is contrary to Circuit precedent ........................................................................................ 8

   IV.   The majority's remedy directive departs from Circuit precedent .............. 13

CONCLUSION ........................................................................................ 14

CERTIFICATE OF COMPLIANCE ...................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adarand Constructors, Inc. v. Pena*,
    515 U.S. 200 (1995)................................................................................5

*Alpha Delta Chi-Delta Chapter v. Reed*,
    648 F.3d 790 (9th Cir. 2011) ...............................................2, 9, 10, 11

*Austin v. Univ. of Or.*,
    925 F.3d 1133 (9th Cir. 2019) .............................................................11

*Christian Legal Soc. v. Eck*,
    625 F.Supp.2d 1026 (D. Mont. 2009)..................................................14

*Christian Legal Society v. Martinez*,
    561 U.S. 661 (2010)...........................................................................1, 4

*D'Lil v. Best W. Encina Lodge & Suites*,
    538 F.3d 1031 (9th Cir. 2008) ...............................................................5

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965)..............................................................................14

*Herb Reed Enters., LLC v. Fla. Entert. Mgmt., Inc.*,
    736 F.3d 1239 (9th Cir. 2013) ...............................................................6

*Hoye v. City of Oakland*,
    653 F.3d 835 (9th Cir. 2011) ...................................................3, 13, 14

*Lakeside-Scott v. Multnomah Cnty.*,
    556 F.3d 797 (9th Cir. 2009) ...............................................................12

*Lopez v. Candaele*,
    630 F.3d 775 (9th Cir. 2010) .................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)................................................................................5

*Papasan v. Allain*,
    478 U.S. 265 (1986)..............................................................................14

*Poland v. Chertoff,*
    494 F.3d 1174 (9th Cir. 2007) .............................................................12

*Sierra Club v. Morton,*
    405 U.S. 727 (1972)................................................................................5

*Summers v. Earth Island Institute,*
    555 U.S. 488 (2009)...............................................................................5

*Truth v. Kent Sch. Dist.,*
    542 F.3d 634 (9th Cir. 2008) ............................................................1, 9

*Wilderness Soc., Inc. v. Rey,*
    622 F.3d 1251 (9th Cir. 2010) ...........................................................5,

*Winter v. Nat. Res. Def. Council, Inc.,*
    555 U.S. 7 (2008)...............................................................................5, 8

*Yazzie v. Hobbs,*
    977 F.3d 964 (9th Cir. 2020) ............................................................7, 8

**Statutes**

Cal. Educ. Code §48907(a) .......................................................................12

**Other Authorities**

9th Cir. R. 35-1 ............................................................................................3

Fed. R. App. P. 35(a) ...................................................................................3

iv

**REASONS FOR REHEARING**

In this case of exceptional importance, the panel majority ordered a public school district to exempt a single student club from a non-discrimination policy that is entirely constitutional under the precedents of the United States Supreme Court and this Court, and to grant the club official recognition and approval even though the club violates the district's lawful policy by prohibiting some students, including LGBTQ+ students, from serving in leadership positions. *But see Christian Legal Society v. Martinez*, 561 U.S. 661, 696 & n.27 (2010) (rejecting constitutional challenge to law school's requirement that officially recognized student clubs accept LGBTQ+ students); *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 648 & n.2 (9th Cir. 2008) (rejecting Equal Access Act challenge to similar school district policy). The panel did so notwithstanding the absence of *any* credible evidence that any students wanted to apply for official recognition but were unwilling to comply with the non-discrimination policy or any other evidence of ongoing injury. And it relied on a "selective enforcement" theory that is contrary to this Court's own precedents and that would make it effectively impossible for most school districts to implement lawful non-discrimination policies. Because the panel's decision cannot be squared with the precedents of this Court and the Supreme Court, rehearing or rehearing *en banc* should be granted.

The majority disregarded well-established Article III precedent in holding that plaintiffs have standing to seek to preliminarily enjoin a policy without presenting admissible or reliable evidence that they will face prospective injury from that policy, or that any such injury would be remedied by a preliminary injunction. The record before the district court and this Court contained *no* evidence that any student wanted to apply for official recognition of a local Fellowship of Christian Athletes ("FCA") club in the 2022-23 school year but was prevented from doing so by the school district's policy of requiring applicants to

1

affirm their compliance with the non-discrimination policy. To manufacture Article III standing in the absence of such evidence, the panel held that vague hearsay statements about future intentions from a non-student third party sufficed to establish Article III standing. Worse yet, the panel majority suggested that a defendant can *waive* constitutionally required standing—and that it may do so by entering into a stipulation that expressly disavows any such waiver. The majority's decision conflicts with governing precedent and, if allowed to stand, would render the limitations imposed by Article III meaningless, enabling parties to manufacture jurisdiction in every case.

On the merits, the majority held that Plaintiffs had shown likely success on their claim that San Jose Unified School District officials violated the Free Exercise Clause and the Equal Access Act by selectively enforcing the district's non-discrimination policy in a manner that disfavored religion. Besides disregarding the district court's contrary findings of uniform enforcement, the panel's decision contravenes this Circuit's precedent holding that the approval of a student club application that is ambiguous regarding compliance with a non-discrimination policy does *not* suffice to establish unconstitutional selective enforcement because the approval may have been unintentional or inadvertent. *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 804 (9th Cir. 2011) (no constitutional claim under selective enforcement theory where approval of other noncompliant groups may have resulted from "administrative oversight" or reflect that groups had agreed not to discriminate). The panel's contrary rule, which treats inadvertent mistakes as anti-religious selective enforcement, will make it impossible for school districts to administer non-discrimination policies.

Finally, the remedy the panel ordered was entirely inconsistent with its theory. Rather than ordering the school district to enforce the non-discrimination policy uniformly going forward, the majority held that the appropriate remedy for

2

past selective enforcement is *continued* selective enforcement. That ruling is contrary to this Circuit's precedent, which provides that the remedy for unlawful selective enforcement is not to give a group special leave to discriminate, but to ensure that the policy is administered even-handedly going forward. *Hoye v. City of Oakland*, 653 F.3d 835, 856 (9th Cir. 2011). The majority's ruling would mean that school districts and other government entities could be forever foreclosed from enforcing their lawful non-discrimination rules equitably and uniformly simply because they mistakenly overlooked a secular group's violation of those rules at some point in the past.

For all these reasons, rehearing should be granted to secure and maintain the uniformity of this Court's decisions and to address issues of exceptional importance. Fed. R. App. P. 35(a); 9th Cir. R. 35-1.

## BACKGROUND

In 2019, a Pioneer High School teacher and principal learned that a student club affiliated with the national Fellowship of Christian Athletes required that, to be eligible for club leadership positions, students must sign a pledge stating that same-sex intimacy is sinful. Op. 9-12. Because this requirement was contrary to the school district's non-discrimination policy, which requires allowing any student to join and run for office in any officially recognized student club, the district withdrew Associated Student Body ("ASB") recognition from the club. Op. 10-12, 14, 16. Pioneer FCA continued to meet and hold events on campus as a non-ASB-recognized student interest group. Diss. 60.

In 2020, two students and the national FCA filed suit. Op. 17-18. They were later joined by Pioneer FCA. The students' graduation mooted their claims for injunctive relief; their damages claims remain pending. Op. 23; Diss. 61, 68.

In 2021, the school district issued new guidelines to formalize and standardize its ASB club recognition practices. Op. 19. The "all-comers policy"

3

requires student clubs applying for ASB recognition to sign an affirmation stating that all students can be members and seek leadership positions regardless of their status or beliefs. Op. 19-20. Despite under-oath predictions that Pioneer FCA would apply for ASB recognition in fall 2021, no students applied at any district high school. Op. 21.

This appeal concerns the district court's denial of FCA and Pioneer FCA's motion for a preliminary injunction to prevent the school district from applying its all-comers rule against FCA clubs for the 2022-23 school year.

The district court denied Plaintiffs' motion, holding that the district's non-discrimination policy is consistent with *Christian Legal Society v. Martinez*, and that Plaintiffs had not established selective enforcement disfavoring religion. Op. 22. The panel reversed and remanded, "direct[ing] the district court to enter an order reinstating FCA's ASB recognition." Op. 46.

## ARGUMENT

I. **The majority's determination that Plaintiffs had established standing to seek prospective relief contradicts decisions of this Court and the U.S. Supreme Court.**

The majority's determination that FCA made a showing of imminent injury adequate to establish Article III standing to seek prospective relief contravened governing precedent of this Court and the Supreme Court, including by holding that a party can waive Article III standing and create federal jurisdiction where the Constitution does not allow it.

As noted, Plaintiffs sought injunctive relief requiring school district officials to recognize FCA clubs notwithstanding their refusal to comply with the district's all-comers club recognition policy. But the Supreme Court has made clear that vague allegations of future plans are insufficient to establish impending injury

warranting prospective relief. *See* Diss. 68-71 (citing *Sierra Club v. Morton*, 405 U.S. 727, 735 (1972); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992); *Summers v. Earth Island Institute*, 555 U.S. 488, 490 (2009)). Rather, Article III requires "an adequate showing that sometime in the relatively near future [a student] *will*" apply for and be denied club recognition due to the non-discrimination policy. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) (cited at Diss. 71). "Following the Supreme Court's lead, [this Court] ha[s] insisted upon 'concrete plans' or 'firm intentions' as an indispensable part of Article III's imminence analysis." Diss. 72 (citing *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1256 (9th Cir. 2010); *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1038-39 & n.9 (9th Cir. 2008)). And "at the preliminary injunction stage, a plaintiff must make a "'clear showing'" of each element of standing. *Lopez v. Candaele*, 630 F.3d 775, 785 (9th Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7 (2008)).

As Judge Christen's dissent explains, the school district's club recognition policy could "cause a real or immediately impending injury" (and an injunction could prevent that injury) only if a Pioneer High School student planned to apply for FCA club recognition for the 2022-23 school year if the policy were enjoined. Diss. 68. Yet no student applied for recognition for the 2021-22 school year. And there was no record evidence identifying any student who would apply for recognition of an FCA chapter in the 2022-23 school year but for the requirement to affirm compliance with the non-discrimination policy.

Instead of requiring a showing of "concrete plans" or "firm intentions" by a student who might suffer an injury, the panel majority found it sufficient for standing purposes to infer, from multiple speculative hearsay declarations by a non-student (FCA employee Rigo Lopez), that a student would apply for recognition. But that type of showing "does not come close to demonstrating

5

concrete plans or firm intentions to apply for ASB recognition for the 2022-23 school year." Diss. 77.

Because only students—and not Lopez—may apply for ASB club recognition, Lopez's declarations offer nothing more than speculation about what third parties might possibly do or intend. That is not enough to establish Article III standing. While inadmissible evidence may sometimes be considered in preliminary injunction proceedings "[d]ue to the urgency of obtaining a preliminary injunction at a point when there has been limited factual development," *Herb Reed Enters., LLC v. Fla. Entert. Mgmt., Inc.*, 736 F.3d 1239, 1250 n.5 (9th Cir. 2013), this case has been pending for over two years, and discovery has not only commenced but been completed. The majority's holding would mean that the plaintiff environmental organization in *Defenders of Wildlife* could have established standing simply by submitting a declaration from a staffer asserting that some nameless member intended at some point in the future to visit the areas at issue (without even explaining the basis for the staffer's speculation).[1]

In addition to defending its consideration of speculation based on vague hearsay, the majority suggested that the school district waived standing by agreeing to a February 2022 stipulation (long after the preliminary injunction briefing had been completed) in which Plaintiffs, *to serve their own purposes*, agreed not to submit any additional student testimony. Op. 29. The panel chastised the school district: "The defendants cannot fault the plaintiffs for failing to submit evidence which they agreed not to require." *Id.* But as the dissent points out, Diss. 76, a party cannot waive Article III standing. Nor does the stipulation— which was entered into after Plaintiffs refused to produce highly relevant witnesses

---

[1] The majority's reliance on this speculative hearsay is even more egregious in that there were "ample reasons to discount" it, given that Lopez "walked back" the statements in his prior declarations when deposed. Diss. 76.

in support of their claims—even purport to do so. Rather, it expressly states that it "does not alter in any way the … requirements for Plaintiffs to establish jurisdiction" and "make[s] no admissions, explicit or implied, about what evidence is necessary…." D. Ct. Dkt. #180-2 at 5-6 ¶¶6-7; Diss. 76.

Finally, as Judge Christen emphasized, the FCA staffer's declarations, even if credited and strung together, did not establish any student's intent to apply for ASB recognition for the 2022-23 school year but for the non-discrimination policy. Lopez's September 2021 prediction that unidentified leaders would apply, "cobbled together" with his first identification of N.M. as a club leader in May 2022 (without stating that N.M. had any such intent), "fall woefully short" of Article III's requirements. Diss. 79.

If the majority's opinion is permitted to stand as the rule of this Circuit, litigants will be allowed to circumvent Article III by relying on speculative hearsay about "some day intentions," in contravention of Circuit and Supreme Court precedent. *See also*, *e.g.*, *Yazzie v. Hobbs*, 977 F.3d 964, 966-67 (9th Cir. 2020) (per curiam) (dismissing appeal from denial of preliminary injunction when plaintiffs did not establish intent to vote in upcoming election using challenged procedure).[2]

## II.    The majority's irreparable injury holding contravenes U.S. Supreme Court precedent.

The majority's holding that Plaintiffs established irreparable injury completely overlooked the need to establish that such injury is *likely*. The panel

---

[2] It is irrelevant that after the panel's opinion a student (who may or may not have been willing to comply with the non-discrimination policy) did in fact submit an FCA club application. What matters is that the evidence in the preliminary injunction record did not suffice to establish Article III standing, and the panel's contrary ruling is now governing Circuit precedent.

held (correctly) that the deprivation of First Amendment rights constitutes irreparable injury, Op. 43-44, but ignored that the school district's policy could cause such a deprivation only if a student actually would apply for FCA recognition but for the non-discrimination policy.

In *Winter v. Natural Resources Defense Council*, the Supreme Court rejected this Circuit's "possibility" of injury standard as "too lenient," and reaffirmed that "plaintiffs seeking preliminary relief [must] demonstrate that irreparable injury is *likely* in the absence of an injunction." 555 U.S. at 22. For the same reasons that Plaintiffs' evidence is insufficient to establish Article III standing, it also does not meet the standard for establishing *likely* imminent injury.

## III. The majority's selective enforcement analysis is contrary to Circuit precedent.

The majority held Plaintiffs likely to succeed on the merits of their claims for injunctive relief because the school district selectively enforced its all-comers policy in a manner that disfavored religion. Op. 34-35 & 43 n.10. The majority based this finding (which contradicted the district court's factual findings) on the approval of a single student club application by an administrator at a high school other than Pioneer (where the underlying events had occurred). In doing so, the majority failed to follow Circuit precedent providing that an inadvertent mistake does not establish discrimination in violation of constitutional protections.

As the majority acknowledges, in 2021 the school district moved from a complaint-driven system to a requirement that all clubs affirm their compliance with the non-discrimination policy in order to obtain ASB recognition. Op. 19-20. Since the adoption of the new system, the evidence was that only a *single* student club (Senior Women), at a different high school (Leland, another of the six comprehensive district high schools), signed the affirmation but also wrote on its

8

application that "[m]embers are considered students who are seniors who identify as female." Diss. 65; Op. 37. The district court found that the written statement was in tension with the signed affirmation, but that there was "'no clear proof that the district allows the club to violate the [non-discrimination p]olicy,'" nor any evidence "that the club actually discriminates." Diss. 65. In keeping with that factual finding, the district court faithfully followed this Court's decision in *Alpha Delta*, in which the Court remanded for consideration a claim that a school was selectively enforcing its non-discrimination policy against a religious club while permitting other clubs to discriminate on prohibited grounds. 648 F.3d at 804. The Court explained that a remand was required because "it is possible that these groups were approved inadvertently because of administrative oversight, or that these groups have, despite the language in their applications, agreed to abide by the non-discrimination policy." *Id.*; *see also Truth*, 542 F.3d at 648 & n.2 (remanding for similar factual determinations). This Court properly recognized that the *inadvertent* recognition of a non-compliant secular student club would not give rise to a claim premised on intentional selective enforcement against religious groups.

Without even mentioning *Alpha Delta*, the majority held that "[t]he School District's refusal to apply the All-Comers policy against the Senior Women Club shows that the plaintiffs will likely prevail on the merits." Op. 41; *see also* Op. 36-38.[3] The majority suggested that the school district's recognition of clubs with

---

[3] The majority reasoned that the school district's purported "double standard was no aberration." Op. 41. The majority acknowledged, however, that its examples of non-compliant groups predated the school district's adoption of a requirement that all ASB-recognized student clubs sign an affirmation that they do not discriminate based on status or belief, *id.*—and so shed no light on the current practice. That the school district's previous process for identifying violations was complaint-driven (such that FCA itself was recognized for many years until the district received complaints about its noncompliance with the non-discrimination

names suggesting affinity associations (like "Black Student Union") would also be inconsistent with its non-discrimination policy, Op. 38-39 n.7, despite record evidence that these groups were open to and had participation from all students. *E.g.*, 7-ER-1164 (Black Student Union had white members and leaders). School districts reading the majority's decision will thus be misled into thinking that if they have a non-discrimination policy, they may no longer allow student clubs that aim, for example, to improve opportunities for girls in STEM or advocate for the rights of particular cultural or ethnic groups, even if those clubs are in fact open to all students.

The reason for *Alpha Delta*'s rule is straightforward. The inadvertent approval of a student club whose submitted application may be in tension with a school district's non-discrimination policy might show sloppiness, but it does not establish that the reason school officials "exempted certain student groups from the non-discrimination policy" or "declined to grant [a religious club] such an exemption [was] because of [its] religious viewpoint." 648 F.3d at 804. In a school district with six large high schools comprising tens of thousands of students, hundreds of student clubs, and thousands of teachers and school officials, there can be no question that administrative errors will occasionally occur. The fact that a single ambiguous application slipped through the cracks does not in itself show that clubs are being treated differently based on whether they are religious or secular. The panel's contrary ruling would seem to mean that school districts' club-approval process must be utterly error-free to be constitutionally permissible.

---

policy) does not establish a past constitutional violation, much less a prospective one. On the contrary, as this Court held in *Stormans, Inc. v. Wiesman*, where a policy's enforcement is complaint-driven and the record contains no indication that similar complaints against non-religious entities went uninvestigated, there is "no evidence of selective enforcement." 794 F.3d 1064, 1084 (9th Cir. 2015).

The panel's selective-enforcement theory also ignores that the grant of recognition to "Senior Women" at Leland High School cannot be attributed to the same decision-makers as the denial of recognition to Pioneer FCA, as would be required to support a selective enforcement theory.  A selective-enforcement claim requires a showing of different treatment of similarly situated persons.  *Austin v. Univ. of Or.*, 925 F.3d 1133, 1138 (9th Cir. 2019); *see also Stormans*, 794 F.3d at 1083-84.  Ignoring these principles, the majority cherry-picked applications approved in the 2021-22 school year at sites other than Pioneer by site-specific decision-makers, and then used those applications to conclude that Pioneer FCA was treated differently even though Pioneer FCA never even applied for 2021-22 recognition.

The majority props up Plaintiffs' selective enforcement case by relying on the stated views of a small number of individual teachers to ascribe a discriminatory purpose to the school district and its officials.  Devoting numerous pages to quotations reflecting individual teachers' views about FCA's requirement that student leaders sign a discriminatory pledge (*e.g.*, Op. 11-14, 16-17)—without mentioning evidence of other teachers' support for FCA—the majority reasons that the all-comers policy was "enacted and implemented by the same School District and Pioneer officials that expressed hostility towards FCA's religious views (more on that later)."  Op. 42.  But the purportedly hostile statements the majority cites were all made by individual teachers (three out of over 1,400 in the school district), not by officials with any decision-making authority.  There was no evidence that these teachers had any role in the decision to derecognize FCA, which the evidence shows was made by school district officials whom the Pioneer principal relied upon for guidance.  3-SER-709, 5-ER-751-52, 8-ER-1321-30, 1348-52.  And there was certainly no evidence that the decision-maker who approved the Senior

Women club at *Leland* High School for the 2021-22 school year was even aware of those statements.[4]

In relying on individual teachers' statements from various points in time, the majority disregarded well-established Circuit precedent requiring a causal link between non-decision-maker statements and the adverse action at issue. *See, e.g.*, *Poland v. Chertoff*, 494 F.3d 1174, 1182 (9th Cir. 2007) ("subordinate's bias is imputed to the employer" only "if the plaintiff can prove that the allegedly independent adverse employment decision was not actually independent because the biased subordinate influenced or was involved in the decision or decisionmaking process"); *Lakeside-Scott v. Multnomah Cnty.*, 556 F.3d 797, 807 (9th Cir. 2009) (no First Amendment violation where "the initial report of possible employee misconduct came from a presumably biased supervisor, but [supervisor's] subsequent involvement in the disciplinary process was so minimal as to negate any inference that the investigation and final termination decision were made other than independently and without bias"). Under the majority's approach, stray remarks by a single teacher who has no role in the adoption or enforcement of a non-discrimination policy or the approval of student clubs could threaten a school district's ability to enforce that policy—even if the district does not make any errors at all in its club recognition process. This will not only threaten schools' efforts to prevent discrimination and promote equality, but could also lead schools to stifle their teachers' own First Amendment-protected speech for fear that offhand remarks by individual teachers will be attributed to decision-makers.

---

[4] The statements and conduct of student journalists also cannot be ascribed to the district. *See, e.g.*, Cal. Educ. Code §48907(a) (prohibiting school districts from restricting pupils' freedom of speech or press, including in school-sponsored publications); *but see* Op. 17 (citing such conduct).

**IV. The majority's remedy directive departs from Circuit precedent.**

Finally, even if the majority were otherwise correct, its directive that the district court enter an injunction granting recognition to FCA is inconsistent with this Circuit's treatment of selective-enforcement challenges to facially neutral policies. Op. 45-46. The proper remedy for a school district's selective enforcement of its policy is an order requiring consistent and equitable application, not one requiring the district to *continue* enforcing its policy selectively by exempting certain student groups.

In *Hoye*, this Court acknowledged that developing a remedy for selective enforcement of a facially constitutional rule "present[s] a remedial puzzle," and explained that the task was to "craft a remedy designed to foreclose" selective enforcement "while preserving the facially valid" law. In other words, the remedy must "ensure that the rule enforced … is a content-neutral one … and not a content-discriminatory rule." 653 F.3d at 856. That objective, this Court held, was served by granting the plaintiffs a declaratory judgment and remanding for the district court to decide whether further relief would be required "to change the [defendant's] enforcement policy." *Id.* at 856-57. In so concluding, the Court recognized that "[t]he District Court, with its greater familiarity with the facts and parties, is better positioned … to address this remedial question," and that "declaratory relief alone" may be sufficient "to change the … enforcement policy." *Id.*

The majority's remedy directive thus breaks from Circuit precedent by requiring the school district to enforce its policy in a content-discriminatory manner. The school district should not be required to allow discrimination by a single student group in contravention of an even-handedly and fairly applied non-discrimination policy. The Court should grant rehearing to address the majority's anomalous remedy directive.

At a minimum, the Court should clarify that the remedy for past selective enforcement of the district's non-discrimination policy is not to forever enjoin the district from prohibiting discrimination by FCA or any other student club, and that, if the district can show that it is consistently enforcing its policy, it will be entitled to enforce that policy with respect to *all* student groups. *See id.* at 857 n.17 (emphasizing that defendant initially enjoined from enforcing facially neutral policy "could later apply for the injunction to be lifted or modified if it made a sufficient showing that it had adopted and would apply an evenhanded enforcement policy"); *Dombrowski v. Pfister*, 380 U.S. 479, 492 (1965) ("the settled rule of our cases is that district courts retain power to modify injunctions in light of changed circumstances").[5]

## CONCLUSION

For these reasons, panel or *en banc* rehearing should be granted to correct the majority's erroneous rulings, which conflict with Circuit and Supreme Court precedent.

---

[5] Past selective enforcement can provide the basis for a §1983 damages claim, but for injunctive relief to issue against government officials, the violation must be ongoing. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986); *see also Christian Legal Soc. v. Eck*, 625 F.Supp.2d 1026, 1046-47 (D. Mont. 2009) ("Absent some evidence of ongoing viewpoint discrimination, such as the granting of exemptions to other non-complying student groups, there is no basis for forever and indefinitely precluding Defendants from enforcing their non-discrimination policy against CLS–UM, which is the relief sought in the Complaint.").

Dated: October 3, 2022                    Respectfully submitted,

                                   By:    */s/ Stacey M. Leyton*
                                          Stacey M. Leyton

                                          Stephen P. Berzon
                                          Stacey M. Leyton
                                          Altshuler Berzon LLP

                                          Amy R. Levine
                                          Dannis Woliver Kelley

                                          Richard B. Katskee
                                          Kenneth D. Upton, Jr.
                                          Americans United for Separation of
                                          Church and State

                                          *Attorneys for Defendants-Appellees*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form11instructions.pdf

**9th Cir. Case Number(s)**  | 22-15827

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

⊙  Prepared in a format, typeface, and type style that complies with Fed. R. App.
P. 32(a)(4)-(6) and **contains the following number of words**: | 4,200 |.

*(Petitions and responses must not exceed 4,200 words)*

## OR

○  In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/Stacey M. Leyton | **Date** | 10/3/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 11**                                                                 *Rev. 12/01/2021*