No. 22-15827

# In the United States Court of Appeals for the Ninth Circuit

FELLOWSHIP OF CHRISTIAN ATHLETES, AN OKLAHOMA CORPORATION, ET AL.,
Plaintiffs-Appellants,
v.
SAN JOSÉ UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,
Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of California
Honorable Haywood S. Gilliam, Jr.
(4:20-cv-02798-HSG)

## RESPONSE TO DEFENDANTS' PETITION FOR REHEARING OR REHEARING EN BANC

KIMBERLEE WOOD COLBY
CENTER FOR LAW & RELIGIOUS
FREEDOM
8001 Braddock Road, Suite 302
Springfield, VA 22151
(703) 642-1070
*kcolby@clsnet.org*

CHRISTOPHER J. SCHWEICKERT
SETO WOOD & SCHWEICKERT LLP
2300 Contra Costa Boulevard
Suite 310
Pleasant Hill, CA 94523
(925) 938-6100
*cjs@wcjuris.com*

DANIEL H. BLOMBERG
  *Counsel of Record*
ERIC S. BAXTER
NICHOLAS R. REAVES
BRANDON L. WINCHEL
THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
Suite 400
Washington, DC 20006
(202) 955-0095
*dblomberg@becketlaw.org*

*Counsel for Plaintiffs-Appellants*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...........................................................................ii

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................ 4

I.  Defendants' justiciability arguments do not identify a
    conflict with precedent and are wrong. ............................................ 4

    A. Defendants ignore dispositive facts and precedent. .................... 4

    B. The panel's decision follows precedent. ...................................... 7

    C. Defendants' irreparable harm argument fails. ............................ 9

II. Defendants' merits argument does not identify a conflict
    with precedent and is wrong. .......................................................... 9

III. Defendants' new remedial argument is waived and wrong. .......... 16

CONCLUSION ...................................................................................... 19

CERTIFICATE OF SERVICE................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpha Delta Chi-Delta Chapter v. Reed*,
 648 F.3d 790 (9th Cir. 2011) ............................................................ 3, 10

*Bates v. United Parcel Serv.*,
 511 F.3d 974 (9th Cir. 2007) ................................................................. 7

*Brown v. Plata*,
 563 U.S. 493 (2011) ............................................................................ 17

*Calvary Chapel Dayton Valley v. Sisolak*,
 982 F.3d 1228 (9th Cir. 2020) ............................................................ 17

*Christian Legal Soc'y v. Walker*,
 453 F.3d 853 (7th Cir. 2006) .............................................................. 17

*Church of the Lukumi Babalyu Aye v. City of Hialeah*,
 508 U.S. 520 (1993) ........................................................................ 13-14

*Clark v. City of Lakewood*,
 259 F.3d 996 (9th Cir. 2001) ................................................................. 5

*Doe No. 1 v. Reed*,
 697 F.3d 1235 (9th Cir. 2012) ............................................................... 4

*Fields v. Palmdale Sch. Dist.*,
 447 F.3d 1187 (9th Cir. 2006) ............................................................. 16

*Fortyune v. Am. Multi-Cinema*,
 364 F.3d 1075 (9th Cir. 2004) ............................................................... 6

*Fulton v. City of Philadelphia*,
 141 S.Ct. 1868 (2021) ............................................................... 9, 14, 17

*Hoye v. City of Oakland*,
 653 F.3d 835 (9th Cir. 2011) ......................................................... 17, 18

*Hsu v. Roslyn Union Free Sch. Distr.*,
  85 F.3d 839 (2d Cir. 1996) ................................................... 15

*InterVarsity v. Univ. of Iowa*,
  5 F.4th 855 (8th Cir. 2021) .......................................... 15, 17

*InterVarsity v. Wayne State Univ.*,
  534 F. Supp. 3d 785 (E.D. Mich. 2021) ............................... 15

*Italian Colors Rest. v. Becerra*,
  878 F.3d 1165 (9th Cir. 2018) ............................................. 7

*Kennedy v. Bremerton Sch. Dist.*,
  142 S.Ct. 2407 (2022) .................................................. 14-15

*Kipp v. Davis*,
  986 F.3d 1281 (9th Cir. 2021) ............................................. 8

*Los Angeles County v. Humphries*,
  562 U.S. 29 (2010) ........................................................... 6

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) .......................................................... 7

*Masterpiece Cakeshop, Ltd., v. Colo. C.R. Comm'n*,
  138 S.Ct. 1719 (2018) ...................................................... 13

*Mecinas v. Hobbs*,
  30 F.4th 890 (9th Cir. 2022) ............................................... 6

*Namisnak v. Uber Techs.*,
  971 F.3d 1088 (9th Cir. 2020) ............................................. 6

*Reed v. Town of Gilbert*,
  576 U.S. 155 (2015) ......................................................... 15

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
  141 S.Ct. 63 (2020) .................................................... 15, 17

*Shrum v. City of Coweta*,
  449 F.3d 1132 (10th Cir. 2006) .......................................... 14

*SNJ Ltd. v. Comm'r of Internal Revenue,*
   28 F.4th 936, (9th Cir. 2022) ............................................................ 16

*Tandon v. Newsom,*
   141 S.Ct. 1294 (2021) .......................................................... 9, 14, 17

*Tenafly Eruv Ass'n v. Borough of Tenafly,*
   309 F.3d 144 (3d Cir. 2002) .............................................................. 17

*Thunder Studios v. Kazal,*
   13 F.4th 736 (9th Cir. 2021) ............................................................ 13

*Truth v. Kent Sch. Dist.,*
   542 F.3d 634 (9th Cir. 2008) .............................................................. 6

*Wild Wilderness v. Allen,*
   871 F.3d 719 (9th Cir. 2017) .............................................................. 5

*Wilderness Soc'y v. Rey,*
   622 F.3d 1251 (9th Cir. 2010) ......................................................... 7-8

## Other Authorities

U.S. Census Bureau, *Top 10 Largest School Districts* (May
   21, 2019), https://perma.cc/PB9C-XZAC .......................................... 15

## INTRODUCTION

Defendants do not come close to satisfying the high standard for re-hearing. Instead, they selectively ignore the facts, disregard or misstate controlling law, and raise erroneous new arguments for the first time.

Defendants start by simply ignoring the "stench of animus against the[ir] students' religious beliefs" that "pervades" their actions. Op.46-47 (Lee, J., concurring). Appellant Fellowship of Christian Athletes is a re-ligious organization with student clubs that have long been officially rec-ognized by the San José Unified School District—as FCA clubs are at thousands of schools nationwide. But that changed in 2019, when District employees targeted FCA's beliefs in class, attacked FCA's beliefs about traditional marriage as " bullshit" that "needed to be barred from a public high school campus," demeaned FCA students as "charlatans" who "choose darkness over knowledge," convened school leadership (the "Cli-mate Committee") to "take a united stance" against FCA, recognized a new club (the Satanic Temple Club) formed to mock FCA's beliefs, and called for protests at FCA meetings. Opening Br.9-13, Dkt.23.

Why? The "heart of the problem," according to the District, is that FCA selects its leadership "based on religious beliefs." 9-ER-1778. While all students (including LGBT students) are welcome to join and can apply to lead FCA clubs, club leaders must sincerely affirm FCA's religious beliefs because they are uniquely responsible for expressing and embodying

those beliefs. Defendants said this leadership rule violated District non-discrimination policies and derecognized FCA clubs District-wide.

No other club has ever faced remotely similar treatment. FCA was the first and only District club to be derecognized for its leadership rules. And while no students had ever actually applied for and been rejected from leadership for failing to share FCA's religious beliefs, secular honor-society clubs regularly exclude students who do not meet club views on "good moral character." Answering Br.44, Dkt.59. The District has knowingly approved clubs that limited leadership based on sex or race, and actively runs a "multitude" of student programs that similarly "segregate students." Opening Br.38-39; Answering Br.40.

Defendants' rehearing petition never disavows their actions against FCA. Indeed, Defendants testified that this conduct was consistent with District policies, that they never did anything wrong, and that they would do it again. Defendants' petition instead repeats justiciability and merits arguments rightly rejected by the panel and trots out new remedial arguments that are as wrong as they are waived.

Defendants' justiciability arguments blinker reality. The District essentially complains that the case is moot because the court can't know whether FCA clubs plan to apply for recognized status. But of course they do—that's why they sued. Defendants also ignore extensive evidence showing that the clubs exist, have student leaders, planned to apply for

official approval once the District's exclusion was enjoined, and—fatally—have *already* applied for recognition this year.

On the merits, Defendants fare no better. They concoct a new holding for *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir. 2011), and argue that the panel both ignored and contradicted it. But the panel cited *Alpha Delta* repeatedly and correctly applied its selective-enforcement analysis. And even if Defendants' imagined holding that the Free Exercise Clause forbids only animus were real, it would be both easily satisfied by Defendants' religious discrimination and plainly superseded by recent Supreme Court precedent.

Finally, Defendants complain that they are "forever foreclosed" from resuming their discrimination against FCA because the panel granted FCA's requested preliminary injunction restoring FCA clubs' official recognition. But that argument is waived (Defendants never made it below or on appeal), misplaced (*preliminary* injunctions do not last "forever"), and wrong (courts often grant similar relief for similar violations).

Defendants fret that the panel's opinion restoring FCA's status will make it "impossible" for schools to enforce non-discrimination policies. But thousands of school districts nationwide manage to both have non-discrimination rules and accommodate FCA every day. The District itself did so for over a decade. The problem is not the panel's analysis but the District's animus. Rehearing is not warranted.

## ARGUMENT

## I. Defendants' justiciability arguments do not identify a conflict with precedent and are wrong.

Defendants' justiciability arguments are premised on the claim that the FCA club at Pioneer High School, Pioneer FCA, cannot show a need for forward-looking relief. Pet.5. Indeed, throughout this litigation, Defendants have variously claimed that Pioneer FCA ceased to exist, Mot. to Dismiss 16, ECF 127; no longer has student leaders, Answering Br.16; and no longer has any intention of seeking official recognition, *id.* at 21.[1] But Defendants now grudgingly admit—in a footnote—that Pioneer FCA not only exists and has student leaders but also successfully applied for official approval. Pet.7 n.2. Defendants' entire justiciability argument therefore relies on a factual premise that Defendants *concede* is false. *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012) ("The basic question in determining mootness is whether there is a present controversy as to which effective relief can be granted." (citation omitted)). It thus fails.

### A. Defendants ignore dispositive facts and precedent.

Defendants stumble right out of the gate because they completely ignore facts and precedent—raised by FCA and relied on by the panel—which confirm that the panel's decision was correct.

---

[1] "ECF" citations are to the district court's docket; "Dkt." citations are to this Court's docket.

*First*, Defendants have not shown that this case is moot. Defendants complain only about factual developments that occurred *after* the complaint was filed. *E.g.*, Mot. to Dismiss 16 ("The fact that there used to be a student group is not sufficient."); Answering Br.21-22 (taking issue with post-complaint factual developments); Pet.5-6 (same). Defendants therefore do not challenge standing; they instead assert mootness. *Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001), as amended (Aug. 15, 2001); Reply Br.27, Dkt. 75. But Defendants provide no evidence to carry their "heavy burden" of proving this case is moot. *Wild Wilderness v. Allen*, 871 F.3d 719, 724 (9th Cir. 2017). Instead, they *admit* that Pioneer FCA's student leaders applied for ASB approval in 2022-23, immediately after the panel enjoined the District's discriminatory policy. Pet.7 n.2; *see also* Exhibits 1-3 of Motion for Leave to Supplement (forthcoming motion with 2022-23 application and approval). This case is not moot and the panel was correct to reject Defendants' justiciability challenge.

*Second*, Defendants ignore key Ninth Circuit precedent—raised by FCA, Reply Br.28, and relied on by the panel, Op.23-24, 27—that further confirms standing and undermines their justiciability arguments.

For example, Defendants ignore precedent confirming that justiciability does not require exercises in futility. And here, Defendants *admitted* that reapplication for ASB approval by Pioneer FCA would be futile. Op.27; Answering Br.8 (admitting the "District's nondiscrimination policy, mak[es] FCA clubs ineligible for ASB recognition"). This, together

with the undisputed evidence of past denied ASB applications by Pioneer FCA, Op.16, is sufficient to show standing for forward-looking relief, Op.27; *Namisnak v. Uber Techs.*, 971 F.3d 1088, 1092-93 (9th Cir. 2020) (plaintiffs "need not engage" in "futile gesture … to show injury in fact").

Similarly, Defendants ignore precedent holding that "plaintiffs 'may demonstrate that an injury is likely to recur by showing that the defendant had ... a written policy, and that the injury 'stems from' that policy.'" Op.24; *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 642 (9th Cir. 2008), *overruled on other grounds by Los Angeles County v. Humphries*, 562 U.S. 29 (2010) (quoting *Fortyune v. Am. Multi-Cinema*, 364 F.3d 1075, 1081 (9th Cir. 2004)). Plaintiffs' injury is undisputedly the result of Defendants' written non-discrimination policy, Op.21-22, thus creating "an implicit likelihood of its repetition in the immediate future." *Truth*, 542 F.3d at 642.

Defendants thus ignore two lines of precedent elemental to the panel's standing analysis. Defendants cannot bluff their way into en banc rehearing by selectively recasting the panel's actual holding.

*Finally*, while Defendants complain about Pioneer FCA's associational standing, they say nothing of FCA National's standing, which the panel separately found sufficient for forward-looking relief. Op.24-25; *see Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022) (only one plaintiff needs standing for each form of relief sought). Defendants' entire justiciability

argument, then, would have no actual impact on the justiciability of this case—a point Defendants do not dispute.

**B. The panel's decision follows precedent.**

The two aspects of the panel's justiciability analysis that Defendants *do* manage to address come through unscathed. Neither was erroneous, warrants rehearing, or would change that "the standing inquiry tilts dramatically toward a finding of standing" in cases that "implicate[] First Amendment rights." *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1174 (9th Cir. 2018) (cleaned up).

*First*, Defendants claim the panel's decision failed to follow *Lujan* and will allow parties to "circumvent Article III by relying on speculative hearsay." Pet.7. Far from it. The panel cited *Lujan* and correctly articulated its rule: a plaintiff seeking forward-looking relief must show "he has suffered or is threatened with a concrete and particularized legal harm, coupled with a sufficient likelihood that he will again be wronged in a similar way." Op.24 (quoting *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). And everyone agrees this is the appropriate test. Pet.5; Op.24; Answering Br.21 (Plaintiffs must show "sufficient likelihood that [they] will again be wronged in a similar way"); Reply Br.28.

Defendants then try to concoct a conflict with a line of aesthetic-injury cases, which rejected standing to bring claims based on "a vague desire to return to the area 'without any description of concrete plans, or indeed

any specification of *when* the some day will be.'" *Wilderness Soc'y v. Rey*, 622 F.3d 1251, 1256 (9th Cir. 2010). But, as the panel explained, this line of cases is not only easily distinguished but actually *supports* Pioneer FCA's standing. Pioneer FCA repeatedly applied for and was denied ASB approval and had a concrete plan to apply again once the District's policy was enjoined—which was the whole point of this lawsuit. Op.21, 28 n.4; *Rey*, 622 F.3d at 1256 ("repeated[]" past visits and "concrete plans to do so again" are "sufficient").

Defendants' complaints about the "speculative" quality of FCA's evidence likewise fail, because they are simply wrong. *See* Reply Br.23-27 (reciting record evidence). And even if they had merit, factual quibbles are not the stuff of en banc review. *Kipp v. Davis*, 986 F.3d 1281, 1285 (9th Cir. 2021) (Paez, J., concurring) (rehearing en banc inappropriate to resolve "the application of settled legal standards to a set of facts").

*Second*, Defendants complain that the panel "waived" Article III requirements. Pet.6. Hardly. The panel never suggested that requirements of Article III were waived or even relaxed. Instead, the panel spent seven pages analyzing standing. Op.23-29. Defendants take issue with the panel pointing out their oft-repeated complaint about the lack of one *type* of evidence (student testimony). Op.29. But this was not a suggestion (much less a holding) that Defendants waived anything. Rather, the panel explained why there was no student testimony in the record—

8

namely, Defendants' stunning intimidation, harassment, and discrimination against the minor students under their near-daily legal control—and why this type of evidence wasn't necessary to show standing. Op.29. The panel found standing based on its assessment of the evidence in the record—not based on waiver. Op.27. This Court does not rehear holdings a panel did not make.

### C. Defendants' irreparable harm argument fails.

As Defendants admit, their irreparable harm arguments rise and fall with their justiciability arguments, Pet.7, and thus fail for the reasons above.

## II. Defendants' merits argument does not identify a conflict with precedent and is wrong.

The panel correctly articulated and applied the rule that, under the Free Exercise Clause, a law will trigger strict scrutiny if it is "selectively enforced against religious entities but not comparable secular entities." Op.33 (citing *Tandon v. Newsom*, 141 S.Ct. 1294, 1296 (2021)); *accord Fulton v. City of Philadelphia*, 141 S.Ct. 1868, 1876 (2021). The panel then found that the District had "selectively enforced—and continues to selectively enforce—[its non-discrimination policies] against FCA while exempting secular ASB student groups." Op.35. Specifically, FCA was the first and only group against which the District had ever enforced its policies, and it did so while allowing clubs like Senior Women, Big Sisters/Little Sisters, the South Asian Club, and Interact to limit not just

leadership but also membership based on gender identity, sex, race, and secular standards of "good moral character." Op.20, 40 n.8.

The District complains that this conclusion contradicts *Alpha Delta Chi-Delta Chapter v. Reed*, a case which it says the panel failed to "even mention[]."Pet.9. Both assertions are wrong.

First, the panel cited *Alpha Delta* four times, including right at the start of its analysis, and correctly articulated *Alpha Delta* as requiring strict scrutiny because Defendants "selectively enforce[d] their policies against FCA only" while "secular student groups were granted exemptions." Op.35 (similarly citing *Truth*).

Second, Defendants' imagined conflict is based on a misreading of *Alpha Delta*. They argue that the "holding" of *Alpha Delta* is that approval of a facially noncompliant club application "does *not* suffice to establish unconstitutional selective enforcement because the approval may have been unintentional or inadvertent." Pet.2. Not so. *Alpha Delta* was an appeal from summary judgment for the defendant school. The relevant issue was not the quantum of proof necessary for injunctive relief but whether plaintiffs had raised a triable issue of fact sufficient to remand. The relevant holding was that they had. Moreover, the evidence there only showed that the school "may" have granted exemptions to secular groups, thus raising a triable question of whether the plaintiffs were, "in fact," "treated differently." *Alpha Delta*, 648 F.3d at 804.

Here, the panel correctly found there was no such uncertainty: FCA had undisputedly been treated differently. The panel started by focusing on a comparison to the Senior Women club. For FCA, the "mere existence" of its religious leadership standards was enough for the District to immediately derecognize FCA and fight for years to keep it excluded, without ever seeking *any* evidence that FCA had *ever* denied a student a leadership position based on those standards. Op.38-39. By sharp contrast, the panel found, the Senior Women's exclusionary membership standards— hand-written twice into their application to bar anyone who does not identify as female—was met with a literal stamp of approval by the District. *Id.* And, the panel explained, the District's insistence that FCA must prove Senior Women *actually* excluded students is just another form of selective enforcement, since the District didn't apply an actual-exclusion test for FCA's abrupt (and continued) derecognition. *Id.*

Moreover, the panel found that other exemptions made the District's discrimination even clearer. Unlike FCA, numerous secular clubs are allowed to restrict membership and leadership based on their definition of "good moral character." Op.40 n.8. And the same Pioneer official who exercised the "final say" to exclude FCA admitted that the Big Sisters/Little Sisters club was approved not as an oversight but precisely "*because* it was … a mentorship for [Pioneer] students who are females to be mentored by … senior female students." 5-ER-852-53 (emphasis added); Op.15, 38 n.7. And the District admitted that clubs may exclude students

on the basis of race, sex, and other criteria in the purpose and benefits of a group. Oral Arg. 31:24 (agreeing "white nationalist group" permissible); 8-ER-1414; 9-ER-1764; SER.703; Op.38-39 n.7.

The District also complains that the panel should have ignored approvals under the version of the non-discrimination policy in force at the time of FCA's initial derecognition, since it "shed[s] no light on the current practice." Pet.9. But the District conceded at oral argument that the current policy is "not a change" from the earlier one, but merely a "formalization of a long-standing practice." Op.41. Nor would this explain away the current good-moral-character exemption, 7-ER-1215, Opening Br.14-15; its exception allowing clubs to have exclusionary purposes, 8-ER-1414; or the District's approval of the South Asian club's race-based preference, 2-ER-109. *See also* 9-ER-1632, 1638-41, 1653; 9-ER-1816, 1654 (admitting District provides a "multitude" of student programs like the Latino Male Mentor Group and Girls Circle that exclude students based on race, age, and sex).

Thus, the panel's holding is a straightforward application of *Alpha Delta* in a case where the facts remove any doubt about Defendants' discrimination.[2]

---

[2] The District faults the panel for failing to defer to the district court's view of the facts, but that claim is misplaced here. First, it is irrelevant to the asserted (but nonexistent) conflict with *Alpha Delta*. Second, the

And, to the extent Defendants argue that *Alpha Delta* requires evidence of not just discriminatory *treatment* but also discriminatory *intent*, they fare no better. *See, e.g.*, Pet.9 (arguing "inadvertent" discrimination permissible); Pet.11-12 (arguing proof is required that same "decision-maker" intentionally discriminated). Even if they were right on the law, that does not help their bid for rehearing given the "stench of animus" pervading their mistreatment of FCA. Op.46 (Lee, J., concurring). Far from being a case about "stray remarks by a single teacher," Pet.12, this is a case of coordinated, explicit, and ongoing religious discrimination by government officials against the religious students entrusted to their care. Moreover, the District has not disavowed its employees' blatant misconduct—never correcting it (even when an employee vowed to do it all over again), never even *investigating* it (despite claiming otherwise to state officials), and still defending it in substance today. Opening Br.18-19; *Masterpiece Cakeshop v. Colo. C.R. Comm'n*, 138 S.Ct. 1719, 1731-32 (2018) ("factors relevant" to neutrality "include" the "historical background of the decision," "specific series of events leading to" it, and refusal to disavow); *Church of the Lukumi Babalu Aye v. City of Hialeah*, 508

---

panel confirmed it was not "find[ing] facts" but just refusing to "shut our eyes to 'uncontested facts.'" Op.39. And third, the panel had a duty to keep its eyes open to scrutinize the entire record and "review constitutional facts *de novo*." *Thunder Studios v. Kazal*, 13 F.4th 736, 742 (9th Cir. 2021).

U.S. 520, 534, 541 (1993) (courts must "survey meticulously the circumstances" of religious discrimination).[3]

Defendants are also wrong on the law: "the Free Exercise Clause is not confined to actions based on animus." *Shrum v. City of Coweta*, 449 F.3d 1132, 1145 (10th Cir. 2006) (McConnell, J.). Even "incidental[]" burdens on religious exercise must be generally applicable. *Fulton*, 141 S.Ct. at 1876. And the Supreme Court has made "clear" that "under the Free Exercise Clause, whenever [regulations] treat *any* comparable secular activity more favorably than religious exercise," they are not generally applicable and must pass strict scrutiny. *Tandon*, 141 S.Ct. at 1296; *Kennedy v. Bremerton Sch. Dist.*, 142 S.Ct. 2407, 2423 (2022) (religious burdens must be "applied in an evenhanded, across-the-board way"). While ill intent can support that result, it is not necessary to it. *Kennedy*, 142

---

[3] Defendants also attempt to seal off their FCA derecognition decision from the extensive evidence of anti-FCA hostility "pervad[ing] the Pioneer High School campus," Op.47, insisting the derecognition "decision-makers" were entirely at the District level and not at Pioneer. Pet.11-12. That is irrelevant, as explained above, and incorrect. The District's primary liaison regarding FCA's derecognition testified repeatedly that the ultimate decision was "handled at the individual school level" and not by the District—albeit with the District's full knowledge and support. 8-ER-1320-21, 1347-48, 1386. And the principal likewise testified that he had the "final say" over FCA's derecognition, 5-ER-782, authority he exercised immediately after his staff told him to "attack[]" and "bar[]" FCA's "bullshit" beliefs and his "Climate Committee" leadership team called for a "united stance" against FCA. 10-ER-1897-98, 10-ER-1924-27.

S.Ct. at 2422 (distinguishing intent-based claims from unequal treatment); *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 66 (2020) (same); *see also Reed v. Town of Gilbert*, 576 U.S. 155, 166 (2015) (speech restrictions are "subject to strict scrutiny regardless of benign motive" or "lack of animus"; plaintiffs "need adduce no evidence of improper censorial motive"); *accord* Prof. McConnell Br. 12-15 ("no need to read" *Alpha Delta* to require animus, but if so read, "no longer good law"); Cardinal Newman Br. 9-12 ("obsolete").

*  *  *

Unable to identify a conflict with circuit law, the District resorts to threatening that the panel's ruling reinstating FCA clubs on District campuses will somehow "make it impossible for school districts to administer non-discrimination policies." Pet.2. Yet the District itself managed that feat in the decade-plus that FCA clubs were officially recognized in District schools before 2019. So too have thousands of schools nationwide, as have colleges with far more student clubs than the District. *Hsu v. Roslyn Union Free Sch. Dist.*, 85 F.3d 839 (2d Cir. 1996); *see also* U.S. Census Bureau, *Top 10 Largest School Districts* (May 21, 2019), https://perma.cc/PB9C-XZAC (identifying largest school district as New York City, which is within the Second Circuit); *InterVarsity v. Univ. of Iowa*, 5 F.4th 855 (8th Cir. 2021); *InterVarsity v. Wayne State Univ.*, 534 F. Supp. 3d 785 (E.D. Mich. 2021).

### III. Defendants' new remedial argument is waived and wrong.

Defendants' argument challenging the injunctive relief FCA received is both waived and wrong.

The panel granted the relief FCA has consistently sought throughout this litigation. *See* Compl., ECF 1 at 47 (requesting "a preliminary injunction … prohibiting Defendants from denying Plaintiffs recognition"); Mot. for Prelim. Inj., ECF 102 at 2 (seeking injunction to "restore recognition" to FCA clubs); Mot. for Inj. Pending Appeal Reply, Dkt. 40-1 at 10-11 (requesting "an injunction restoring Pioneer FCA's ASB-approved status"). Defendants did not take issue with this requested relief before the district court or the panel. Only now, in a rehearing petition, do Defendants fabricate this new theory. But this Court will "not consider on rehearing new issues previously not raised, briefed or argued." *Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1190 (9th Cir. 2006) (per curiam); *SNJ Ltd. v. Comm'r of Internal Revenue*, 28 F.4th 936, 939 n.1 (9th Cir. 2022). Defendants have accordingly waived the argument.

Even if it wasn't waived, Defendants' argument would still fail. Defendants assert rehearing is required so that the District is not "forever enjoin[ed]" from prohibiting discrimination by any student club. Pet.14. But that is not at issue. This appeal regards FCA's *preliminary* injunction motion. By its very nature, the requested relief is temporary. And even permanent injunctions remain subject to modification should justice

require. *See Brown v. Plata*, 563 U.S. 493, 542 (2011). Defendants' argument is baseless.

Moreover, Defendants' novel rule runs directly contrary to the law of the Supreme Court, this Circuit, and several other circuits. The Supreme Court and this Circuit have repeatedly found that a proper remedy under the Free Exercise Clause for a scheme that discriminates, or allows discrimination, against religion is to raise religious groups up to the level of exempt secular comparators. *Tandon*, 141 S.Ct. at 1296 (granting preliminary injunction requiring government to treat religious institutions as favorably as secular ones); *Diocese of Brooklyn*, 141 S.Ct. at 65 (same); *Calvary Chapel Dayton Valley v. Sisolak,* 982 F.3d 1228, 1233 (9th Cir. 2020) (same). That approach applies to non-discrimination policies like those here. *Fulton*, 141 S.Ct. at 1882. Defendants' rigid rule would also conflict with precedent from multiple other circuits, which have remedied selective enforcement with injunctions like the one here. *Intervarsity*, 5 F.4th at 859; *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 866-67 (7th Cir. 2006); *Tenafly Eruv Ass'n v. Borough of Tenafly*, 309 F.3d 144, 152 (3d Cir. 2002).

Defendants suggest *Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011), supports their position. Pet.13. But *Hoye* is inapposite. First, *Hoye* expressly declined to direct the district court to order any particular form of injunctive relief. 653 F.3d at 856. Second, while Defendants argue the

proper remedy here is to require the district to uniformly *enforce* its policy, *Hoye* suggested the opposite: that selective enforcement could be addressed by "enjoining the City *from continuing to enforce* the Ordinance." *Id.* at 857 (emphasis added). Third, *Hoye* is a unique case that presented a "remedial puzzle" because Oakland refused to acknowledge the gap between its discriminatory enforcement and its facially valid policy. *Id.* at 856 ("Oakland has insisted that there is no distinction between the actual Ordinance and what it enforces."). That is not this case, where the District's discrimination is plain and where a targeted injunction provides the relief to which FCA is entitled.

Defendants' novel remedial rule would create perverse incentives. If the only available remedy for selective enforcement is not to treat plaintiffs better but to treat everyone *worse*, plaintiffs have little reason to challenge such unconstitutional conduct. By contrast, governments could choose to begin equal enforcement only after a court order advised them to do a better job enforcing the challenged law.

Finally, rehearing would not change the remedy here. FCA's alternative arguments that do not rely on selective enforcement—including the Free Exercise Clause's neutrality requirements, the Religion Clauses' protection for the autonomy of religious groups to have religious leadership, and the Equal Access Act—would require at least the same result: injunctive relief restoring FCA clubs' recognized status during this litigation. And, again, Defendants never argued otherwise.

18

# CONCLUSION

The petition should be denied.

Respectfully submitted,

*/s/ Daniel H. Blomberg*

KIMBERLEE WOOD COLBY
CENTER FOR LAW & RELIGIOUS
FREEDOM
8001 Braddock Road, Suite 302
Springfield, VA 22151
(703) 642-1070
*kcolby@clsnet.org*

CHRISTOPHER J. SCHWEICKERT
SETO WOOD & SCHWEICKERT LLP
2300 Contra Costa Boulevard
Suite 310
Pleasant Hill, CA 94523
(925) 938-6100
*cjs@wcjuris.com*

DANIEL H. BLOMBERG
  C*ounsel of Record*
ERIC S. BAXTER
NICHOLAS R. REAVES
BRANDON L. WINCHEL*
THE BECKET FUND FOR
RELIGIOUS LIBERTY
1919 Pennsylvania Ave. NW
  Suite 400
Washington, DC 20006
(202) 955-0095
*dblomberg@becketlaw.org*

* Admitted only in California. Practice limited to cases in federal court.

## CERTIFICATE OF SERVICE

I certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on November 14, 2022. All participants in the case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

*/s/ Daniel H. Blomberg*
Daniel H. Blomberg

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 11. Certificate of Compliance for Petitions for Rehearing/Responses

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form11instructions.pdf*

**9th Cir. Case Number(s)** | 22-15827

I am the attorney or self-represented party.

I certify that pursuant to Circuit Rule 35-4 or 40-1, the attached petition for

panel rehearing/petition for rehearing en banc/response to petition is (*select one*):

Prepared in a format, typeface, and type style that complies with Fed. R. App.

⊙ P. 32(a)(4)-(6) and **contains the following number of words**: | 4,189 | .

*(Petitions and responses must not exceed 4,200 words)*

**OR**

○ In compliance with Fed. R. App. P. 32(a)(4)-(6) and does not exceed 15 pages.

**Signature** | s/ Daniel H. Blomberg | **Date** | 11/14/2022

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 11** *Rev. 12/01/2021*