No. 22-15827

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
_____

FELLOWSHIP OF CHRISTIAN ATHLETES, AN OKLAHOMA CORPORATION, ET AL.,

Plaintiffs-Appellants,

v.

SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

Defendants-Appellees,
_____

Appeal from the United States District Court
For the Northern District of California
Honorable Haywood S. Gilliam, Jr.
(4:20-cv-02798-HSG)
_____

# DEFENDANTS-APPELLEES' REPLY TO RESPONSE TO PETITION FOR REHEARING OR REHEARING EN BANC
_____

Amy R. Levine
alevine@DWKesq.com
Dannis Woliver Kelley
200 California Street, Suite 400
San Francisco, CA 94111
Telephone: (415) 543-4111

Richard B. Katskee
katskee@au.org
Kenneth D. Upton, Jr.
upton@au.org
Americans United for Separation of
Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234

Stephen P. Berzon
sberzon@altber.com
Stacey M. Leyton
sleyton@altber.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151

*Attorneys for Defendants-Appellees*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

A. The panel erred in ordering recognition of FCA rather than remanding to allow the district court to craft an appropriate injunction ..............................................................................................1

B. Defendants did not waive their objection to the improper injunctive relief ordered for the first time by the panel.......................4

C. The panel was wrong on the merits...................................................6

D. Plaintiffs never had standing for prospective relief, and their new evidence cannot change that or justify injunctive relief on the record before the district court ..........................................................9

CONCLUSION ........................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alpha Delta Chi-Delta Chapter v. Reed*,
  648 F.3d 790 (9th Cir. 2011) ................................................................. 2, 7, 8, 9

*Calvary Chapel Dayton Valley v. Sisolak*,
  982 F.3d 1228 (9th Cir. 2020) ...................................................................... 3, 4

*Christian Legal Society v. Martinez*,
  561 U.S. 661 (2010) ......................................................................................... 2

*Christian Legal Society v. Walker*,
  453 F.3d 853 (7th Cir. 2006) .......................................................................... 4

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) ........................................................................................... 9

*East Bay Sanctuary Covenant v. Garland*,
  994 F.3d 962 (9th Cir. 2020) ........................................................................... 6

*Farrar v. Hobby*,
  506 U.S. 103 (1992) ......................................................................................... 4

*Fields v. Palmdale School District*,
  447 F.3d 1187 (9th Cir. 2006) ........................................................................ 6

*Fulton v. City of Philadelphia*,
  141 S. Ct. 1868 (2021) ................................................................................. 3, 8

*Fyock v. Sunnyvale*,
  779 F.3d 991 (9th Cir. 2015) ........................................................................ 10

*Hoye v. City of Oakland*,
  653 F.3d 835 (9th Cir. 2011) .............................................................. 1, 2, 3, 4

*Intervarsity Christian Fellowship/USA v. University of Iowa*,
  5 F.4th 855 (8th Cir. 2021) ............................................................................. 4

*Kennedy v. Bremerton School District*,
  142 S. Ct. 2407 (2022) .................................................................................... 8

*Melendres v. Arpaio*,
　784 F.3d 1254 (9th Cir. 2015) ...................................................................... 6

*In re Mercury Interactive Corp. Securities Litigation*,
　618 F.3d 988 (9th Cir. 2010) ........................................................................ 5

*National Wildlife Federation v. National Marine Fisheries Service*,
　422 F.3d 782 (9th Cir. 2005) ...................................................................... 10

*Roman Catholic Diocese of Brooklyn v. Cuomo*,
　141 S. Ct. 63 (2020) ................................................................................. 3, 9

*SNJ Limited v. Commissioner of Internal Revenue*,
　28 F.4th 936 (9th Cir. 2022) ......................................................................... 6

*Stormans, Inc. v. Selecky*,
　586 F.3d 1109 (9th Cir. 2009) .................................................................... 10

*Stormans, Inc. v. Wiesman*,
　794 F.3d 1064 (9th Cir. 2015) ...................................................................... 6

*Tandon v. Newsom*,
　141 S. Ct. 1294 (2021) .............................................................................. 3, 8

*Tenafly Eruv Association, Inc. v. Borough of Tenafly*,
　309 F.3d 144 (3d Cir. 2002) ......................................................................... 4

*Truth v. Kent School District*,
　542 F.3d 634 (9th Cir. 2008) .................................................................... 2, 7

*United Parcel Service, Inc. v. Flores-Galarza*,
　318 F.3d 323 (1st Cir. 2003) ........................................................................ 5

In this important case concerning the ability of public schools to protect students from discrimination in school-sponsored activities, Plaintiffs' Response (Dkt. 97) fails to justify the panel majority's departure from controlling precedent. In finding a constitutional violation, the panel majority disregarded Circuit authority and overrode the factual findings of the district court. The panel then imposed an improper remedy that authorizes a single group's ongoing discrimination against LGBTQ+ students in violation of the school district's facially valid non-discrimination policy, rather than allowing the district court to determine what relief would be sufficient to prevent future selective enforcement of that policy, as controlling Circuit precedent requires. Defendants did not waive the right to challenge this remedy, which was imposed for the first time by the panel's decision. Finally, the panel's findings that Plaintiffs had standing to seek injunctive relief and showed irreparable injury similarly contravened Circuit and Supreme Court precedent.

A. **The panel erred in ordering recognition of FCA rather than remanding to allow the district court to craft an appropriate injunction.**

Plaintiffs cannot defend the remedy ordered by the panel—immediate reinstatement of the Fellowship of Christian Athletes ("FCA") as an officially recognized club despite its noncompliance with the school district's religiously neutral non-discrimination policy—as consistent with *Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011). Plaintiffs do not deny that *Hoye* instructs that the appropriate remedy for unconstitutional selective enforcement of a "facially constitutional" policy like the one here must "foreclose [the policy's] continued

1

[selective] enforcement, while preserving the facially valid [policy]." *Id.* at 856.[1] And they acknowledge that "*Hoye* expressly declined to direct the district court to order any particular form of injunctive relief." Resp. 17. Thus, Plaintiffs effectively concede that, under *Hoye*, which left the question of appropriate relief to "[t]he District Court, with its greater familiarity with the facts and parties," the panel should have remanded to the district court with instructions to enjoin future enforcement of the facially valid policy only if other forms of relief were "inadequate to change the [selective] enforcement." 653 F.3d at 856, 857.[2]

In a further attempt to defend the panel's approach, Plaintiffs contend that *Hoye* was unique because there the defendant "refused to acknowledge the gap between its discriminatory enforcement and its facially valid policy." Resp. 18. But if anything, that distinction strengthens the case for permitting the district court to determine the appropriate remedy here. The "selective enforcement" identified by the panel majority resulted from inadvertent administrative mistakes, now over a year old, whereas in *Hoye* the defendant's discriminatory enforcement was intentional. 653 F.3d at 856 ("[T]he City's own pronouncements definitively articulate a content-discriminatory enforcement policy."). Thus, the panel should have followed this Circuit's precedent and permitted the district court to decide in

---

[1] The non-discrimination policy here is indistinguishable from the policies upheld in *Christian Legal Society v. Martinez*, 561 U.S. 661 (2010), *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790 (9th Cir. 2011), and *Truth v. Kent School District*, 542 F.3d 634 (9th Cir. 2008).

[2] Plaintiffs' suggestion that *Hoye* held that the proper remedy was to enjoin future enforcement of the facially valid policy ignores the Court's holding that such relief is permissible only when there is no other means of preventing selective enforcement. *Id.* at 856–57 & 857 n.17.

2

the first instance whether the school district should be given an opportunity to fix any inadvertent past mistakes and apply its policy uniformly going forward. *Id.*[3]

     Plaintiffs are also incorrect in urging that Supreme Court and Circuit precedent require the remedy that the panel ordered. Resp. 17. Initially, they wrongly suggest that *Fulton v. City of Philadelphia*, 141 S. Ct. 1868 (2021), held that the proper remedy for the unlawful discrimination there was to require an exception for religious groups. In fact, *Fulton* remanded for the lower courts to determine the appropriate relief. *Id.* at 1882. And unlike here, *none* of the controlling authorities that Plaintiffs cite involved creating an exception out of whole cloth, *only* for the suing religious organization, untethered to any formal exceptions in the policy at issue. Rather, each of those decisions merely *extended* an existing formal policy exception to the plaintiffs who had been improperly denied access to that exception. *See Tandon v. Newsom*, 141 S. Ct. 1294, 1297–98 (2021) (granting exemption for religious groups from three-household-gathering restriction from which numerous commercial establishments were formally exempted); *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020) (exempting religious institutions from attendance limits from which "essential" businesses were formally exempt); *Calvary Chapel Dayton Valley v. Sisolak*, 982 F.3d 1228, 1234 (9th Cir. 2020) (exempting worship services from attendance capacity restrictions less favorable than imposed on other establishments). Further, *Calvary Chapel* explicitly provided that "[t]he district court may modify this

---

[3] At the very least, the panel should modify its opinion to make explicit that the district court retains the authority to modify or dissolve the injunction should the school district demonstrate that its non-discrimination policy is being enforced uniformly against all student groups. *See* Resp. 16-17 (acknowledging that "injunctions remain subject to modification should justice require"); *Hoye*, 653 F.3d at 857 n.17.

preliminary injunctive relief, consistent with this opinion and general equitable principles." 982 F.3d at 1234.[4]

Finally, Plaintiffs contend that any remedy other than what the panel ordered would give plaintiffs "little reason to challenge such unconstitutional conduct." Resp. 18. But Section 1983 remedies are designed to address a defendant's unlawful conduct, not to incentivize litigation. *See, e.g.*, *Farrar v. Hobby*, 506 U.S. 103, 112 (1992) ("basic purpose" of §1983 is "to compensate persons for injuries caused by the deprivation of constitutional rights" (quotations omitted)). The proper remedy for a selective enforcement violation is to ensure even-handed enforcement. And as *Hoye* demonstrates, plaintiffs have numerous other available remedies, including not only declaratory relief but also damages and attorneys' fees.

**B.     Defendants did not waive their objection to the improper injunctive relief ordered for the first time by the panel.**

Plaintiffs are also mistaken in arguing that any challenge to the scope of the injunctive relief ordered in the first instance by the panel, in contravention of this Circuit's binding *Hoye* precedent, is waived. Because the district court *denied*

---

[4] Nor are Plaintiffs' out-of-circuit authorities any more on-point. *Intervarsity Christian Fellowship/USA v. University of Iowa*, 5 F.4th 855, 863, 864-65 (8th Cir. 2021), was an appeal from a denial of qualified immunity at summary judgment, and says nothing at all about injunctive relief. *Christian Legal Society v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006), does not direct entry of any specific form of injunction on remand. And in *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144 (3d Cir. 2002), where the district court had overlooked *decision-makers*' openly stated hostility to the plaintiffs' Orthodox Jewish community, *see id.* at 152-53, 168, the panel merely ordered that the Borough *continue* non-enforcement of its policy—maintaining a status quo that had never changed, *id.* at 178-79.

Plaintiffs' preliminary-injunction request, there was no injunction, and hence no need to challenge the scope of an injunction, either below or on appeal.

The waiver principle operates to ensure that arguments are "raised sufficiently for the trial court to rule" on them, so that "the district court [has] the opportunity to reconsider its rulings and correct its errors." *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010) (quotations omitted). But the district court did not issue an injunction or commit any remedial error at all. And on appeal, Defendants could not have challenged the scope of a nonexistent injunction. When the *panel*, for the first time, determined that Plaintiffs were entitled to some relief, "the parties should [have] be[en] afforded an additional opportunity to present the court with their positions as to the nature and scope of the remedy," *United Parcel Serv., Inc. v. Flores-Galarza*, 318 F.3d 323, 338 (1st Cir. 2003).[5] Indeed, here, there was no reason that Defendants should have predicted that if the panel reversed the district court it would order this type of remedy, given binding circuit precedent instructing that remedial issues should be resolved on remand in a manner that prevents selective enforcement while preserving the facially valid policy. *See supra* at 1-4; *cf. also* Dkt. 59 (Answering Br.) at 23 (arguing that injunction requiring recognition of non-existent student group would be error).

Plaintiffs cite no authority for the proposition that a party that has prevailed on the merits below and has addressed the issues raised in an appellant's opening brief is barred from challenging a panel's directive to issue an injunction that

---

[5] Presumably for the same reasons, Plaintiffs did not raise questions regarding the appropriate scope of relief. *See* Dkt. 23 (Opening Br.). And Defendants responded to all the issues that Plaintiffs did raise. *See* Dkt. 59 (Answering Br.).

5

contravenes Circuit precedent.[6] On rehearing, if the Court concludes that there was any violation of law, it should remand for a decision on remedies, or at the very least, ensure that the relief granted is "no more burdensome" than would be "dictated by the extent of the violation." *East Bay Sanctuary Covenant v. Garland*, 994 F.3d 962, 986 (9th Cir. 2020); *see also Melendres v. Arpaio*, 784 F.3d 1254, 1266 (9th Cir. 2015) (reaffirming that relief may not be "aimed at eliminating a condition that does not violate the Constitution" (quotations omitted)).

### C. The panel was wrong on the merits.

There is no dispute that before 2021 the school district had a complaint-driven non-discrimination policy, that the only complaint that school or district officials received regarding a violation of that policy was about FCA, that beginning in 2021 the district required all student clubs to sign an affirmation that they would not discriminate, and that all officially recognized student clubs complied with that requirement.[7] Thus, that "FCA was the first and only group" to face derecognition for violating the policy sheds no light on whether the school district was selectively enforcing its policy to disfavor religion. Resp. 9; *see also Stormans, Inc. v. Wiesman*, 794 F.3d 1064, 1083-84 (9th Cir. 2015).

---

[6] Plaintiffs cite cases in which *appellants* introduced new *merits* arguments in a reply brief or rehearing petition. *See SNJ Ltd. v. Comm'r of Internal Revenue*, 28 F.4th 936, 939 & n.1 (9th Cir. 2022) (reply raised procedural due process claim; opening brief made only statutory arguments); *Fields v. Palmdale Sch. Dist.*, 447 F.3d 1187, 1190 (9th Cir. 2006) (procedural (as opposed to substantive) due process claim raised for first time in rehearing petition). Neither supports the proposition that *appellees* must challenge an injunction that was never entered.

[7] Counsel's statement at oral argument that the non-discrimination ("all-comers") *policy* had not changed in no way negates the fact that the school district had transitioned from a complaint-driven approach to requiring that all clubs sign affirmations that they would comply with the policy. Oral Arg. 24:09-28:28; *see also* Answering Br. 46-47.

Plaintiffs are correct that the panel did cite *Alpha Delta*, Resp. 10, but that elides the relevant point: the panel nowhere addresses, or even *acknowledges*, *Alpha Delta*'s directive that a school's approval of a group or groups that set forth discriminatory membership requirements in their club applications does not by itself establish unconstitutional selective application, given that "it is possible that these groups were approved inadvertently because of administrative oversight, or that these groups have, despite the language in their applications, agreed to abide by the nondiscrimination policy." 648 F.3d at 804. That is because, without evidence excluding the possibility that the school inadvertently approved those groups, or that it required them to affirm their non-discrimination, or that the groups did not actually discriminate, the school's clerical approval of those clubs' applications does not establish that the school has treated religious groups differently from secular ones "because of [their] religious viewpoint." *Id. Alpha Delta* is on all fours with this case and dictates the proper result.

Plaintiffs seek to evade *Alpha Delta* by arguing that "the evidence there only showed that the school 'may' have granted exemptions to secular groups," not that it actually did so. Resp. 10. But in fact, the evidence of such exemptions was, if anything, stronger in *Alpha Delta*: There, the exclusionary language in the clubs' constitutions was explicit, and it was *unknown* whether the groups had nonetheless agreed to comply with a non-discrimination policy. *See Alpha Delta*, 648 F.3d at 803-04 ("For example, the Catholic Newman Center's application for official recognition by San Diego State provides that its officers must be 'members, in good standing, with the Catholic Church,'" and "the African Student Drama Association's constitution limits its leadership positions to students from Africa").[8]

---

[8] Similarly, in *Truth*, 542 F.3d at 648 & n.2, "at least two groups, the Men's Honor Club and the Girl's Honor Club, were granted ASB recognition even though

7

Here, by contrast, there is no dispute that Senior Women and the South Asian Club agreed to comply. Moreover, here, unlike in *Alpha Delta*, the district court made factual findings—which Plaintiffs do not dispute are owed deference on appeal—that Plaintiffs (who had the burden of proof) failed to show "that District officials have actually given any clubs permission to discriminate in violation of the Policy." 1-ER-9:7-9; *see also* 1-ER-18:18-19 (Plaintiffs' "examples do not show that the District has, in the past, knowingly allowed ASB clubs to violate the Policy"); 1-ER-19:8-10 ("The 2021-2022 school year applications Plaintiffs offer as proof of selective enforcement also fail to demonstrate that the District enforces the Policy as to some student groups but not others."). To the extent that, in Plaintiffs' words, "the panel … *found*" otherwise, Resp. 11 (emphasis added), it improperly displaced the district court's well-established role as the factfinder.

To be clear, Defendants are not suggesting that "animus" is required to establish a Free Exercise Clause violation. In arguing that intent is not required, Resp. 13-15, Plaintiffs confuse *animus* with *intent.* In the cases they cite, there was no question that religious activity was *intentionally* being treated differently from secular conduct; none involved any question whether the differential treatment of the religious conduct might have been inadvertent or accidental. *See*, *e.g*., *Tandon*, 141 S. Ct. at 1297 (policy expressly excluded religious activities while permitting comparable secular activities); *Fulton*, 141 S. Ct. at 1874, 1878 (noting that city stopped referring foster children to religious group that violated non-discrimination policy while maintaining completely discretionary exemption authority); *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2422 (2022) (noting

---

their membership is based on gender, a protected ground under the District's policy," but this Court nonetheless remanded for a determination whether the differential treatment was "on the basis of religion or the religious content of speech."

that policy was "specifically directed at … religious practice" (quotations omitted)); *Roman Cath. Diocese*, 141 S. Ct. at 65-66 (regulations "single out houses of worship for especially harsh treatment"). In contrast, here, the district court found that there was no *intentional* differential treatment, so that under *Alpha Delta* there was no unconstitutional selective enforcement. 648 F.3d at 804.[9]

The panel's disregard of *Alpha Delta* threatens school districts throughout the Circuit—many of which, like San Jose Unified, have thousands of teachers and administrators—with the prospect that an inadvertent clerical error will invalidate their policies forbidding student clubs from discriminating against fellow students, even though such policies vindicate important governmental interests and have been upheld by this Court and the Supreme Court.

**D. Plaintiffs never had standing for prospective relief, and their new evidence cannot change that or justify injunctive relief on the record before the district court.**

Both the panel majority and dissent understood that the crucial threshold question in this case is Plaintiffs' standing, not mootness. *See* Op. 23-29, 63-82. If plaintiffs seeking a preliminary injunction lack standing to pursue injunctive relief, even changed circumstances cannot create standing, any more than past injury can. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 105-10 (1983). Accordingly, Plaintiffs' discussion of mootness, *see* Resp. 4-5, is beside the point.

---

[9] Plaintiffs also assert that discriminatory intent was shown because "this is a case of coordinated, explicit, and ongoing religious discrimination" driven by anti-religious malice. Resp. 13-14 & n.3; *see also id.* 1-2. In doing so, they misrepresent the relevant record and district court's factual findings, as explained by the panel dissent. *See*, *e.g.*, 1-ER-15-19; Op. 58-59; Answering Br. 8-10, 53-54.

Plaintiffs never produced non-speculative evidence in the district court that at least one student planned to seek ASB recognition for an FCA group at Pioneer but would not do so because of the school district's non-discrimination policy. And if no student had "concrete" prospective plans to seek recognition but was thwarted from doing so by the policy, then neither Plaintiff organization can assert either direct or representational standing to seek injunctive relief. *See* Op. 66-68, 77. Plaintiffs' attempt to submit new evidence in this Court does not change that standing analysis.

Nor could that additional evidence somehow excuse Plaintiffs' failure to establish a likelihood of irreparable harm when they sought a preliminary injunction in July 2021 or when their motion was heard in May 2022. The question in this appeal is whether the district court abused its discretion in denying a preliminary injunction. *See, e.g.*, *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1119 (9th Cir. 2009). A determination of error by this Court cannot be based on evidence that was not in "the record before" the district court. *Fyock v. Sunnyvale*, 779 F.3d 991, 1001 (9th Cir. 2015). If subsequent developments make it appropriate to reconsider whether an injunction should issue, that does not make the original decision erroneous; the new developments are simply changed circumstances for the district court to consider in the first instance. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 799-800 (9th Cir. 2005).

## CONCLUSION

Rehearing or rehearing en banc should be granted.

//

//

//

//

Dated: November 23, 2022                    Respectfully submitted,

            By: */s/ Stacey M. Leyton*
               Stacey M. Leyton

               Stephen P. Berzon
               Stacey M. Leyton
               Altshuler Berzon LLP

               Amy R. Levine
               Dannis Woliver Kelley

               Richard B. Katskee
               Kenneth D. Upton, Jr.
               Americans United for Separation of
               Church and State

               *Attorneys for Defendants-Appellees*