No. 22-15827

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

FELLOWSHIP OF CHRISTIAN ATHLETES, AN OKLAHOMA CORPORATION, ET AL.,

Plaintiffs-Appellants,

v.

SAN JOSE UNIFIED SCHOOL DISTRICT BOARD OF EDUCATION, ET AL.,

Defendants-Appellees,

Appeal from the United States District Court
For the Northern District of California
Honorable Haywood S. Gilliam, Jr.
(4:20-cv-02798-HSG)

## APPELLEES' CONDITIONAL CROSS-MOTION TO SUPPLEMENT RECORD

Amy R. Levine
alevine@DWKesq.com
Dannis Woliver Kelley
200 California Street, Suite 400
San Francisco, CA 94111
Telephone: (415) 543-4111

Richard B. Katskee
katskee@au.org
Kenneth D. Upton, Jr.
upton@au.org
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Telephone: (202) 466-3234

Stephen P. Berzon
sberzon@altber.com
Stacey M. Leyton
sleyton@altber.com
Altshuler Berzon LLP
177 Post Street, Suite 300
San Francisco, CA 94108
Telephone: (415) 421-7151

*Attorneys for Defendants-Appellees San Jose Unified School District Board of Education, et al.*

**CONDITIONAL CROSS-MOTION FOR
LEAVE TO SUPPLEMENT THE RECORD**

Pursuant to Ninth Circuit Rule 27-1, Defendants-Appellees conditionally seek to supplement the record if the Court grants Plaintiffs' request to supplement. Dkt. 98-1. Defendants' position remains that the appellate record is set and that *no* supplemental evidence is appropriate at this stage, so Plaintiffs' motion should be denied. But if the Court were to consider Plaintiffs' additional evidence, it should then consider the full scope of additional evidence as it relates to standing, the merits of the discriminatory-enforcement claim, and the appropriate remedy, to ensure that the Court has the benefit of a complete and accurate presentation of evidence.

**BACKGROUND**

On November 14, 2022, after Defendants filed a petition for rehearing or rehearing en banc, Plaintiffs filed a motion to supplement the record to submit evidence of their standing to seek injunctive relief. Dkt. 98-1. That motion attached evidence that, according to Plaintiffs, showed that three days after this Court's August 29, 2022 decision, two students, N.M. and B.C., submitted a student-club application for Pioneer FCA. Dkt. 98-4 at 5-9. The District approved the application a few days after that submission. Ex. 1 (Declaration of Stephen McMahon ("McMahon Decl.")) ¶5; Ex. 2 (Declaration of Michelle Mayhew ("Mayhew Decl.")) ¶¶3-4; Ex. 4 (Declaration of Amy R. Levine ("Levine Decl.")) ¶4 & Ex. C thereto.

Defendants opposed Plaintiffs' motion to supplement, arguing that (1) evidence that was not before the district court at the time when it considered and denied the request for a preliminary injunction is irrelevant to the question whether the denial was an abuse of discretion, and (2) to the extent that the

1

evidence showed changed circumstances, it is irrelevant to this appeal and should be presented to the district court in the first instance in support of a renewed request for a preliminary injunction or in the merits phase of the litigation. Dkt. 100.

## ARGUMENT

It remains Defendants' position that this Court should reject all additional evidentiary submissions. If, however, the Court were to accept Plaintiffs' submission, it should also consider the attached supplemental evidence from Defendants, some of which relates to standing, and some of which relates to the District's uniform enforcement of the challenged policies.

**A.  Standing-related evidence**

Initially, Defendants' supplemental evidence shows that while two students signed a club application, they were not, and are not, actually committed to organizing a club. Consequently, Pioneer FCA did not participate in club rush and has not met or engaged in any activities this school year.

Defendants' supplemental evidence shows that:

- District-wide, the *only* application for Associated Student Body recognition that the San Jose Unified School District received from a Fellowship of Christian Athletes club was one at Pioneer High School, which was signed by two Pioneer students referred to herein by their initials, N.M. and B.C. Dkt. 98-4; Ex. 1 (McMahon Decl.) ¶6; Ex. 2 (Mayhew Decl.) ¶3 & Ex. A thereto.
- Although the Pioneer FCA application stated that the club was going to meet twice a month and intended to organize numerous club activities, *id.,* and the club was approved in early September 2022, Pioneer FCA has to date held *no* club meetings, did *not* participate in club rush, and has held *no* club activities. Ex. 2 (Mayhew Decl.) ¶¶7,

2

- 10-17) & Ex. A thereto (Q.14); Ex. 3 (Declaration of Tim Koring ("Koring Decl.")) ¶¶2-4, 8.  What is more, the students listed as club leaders did not respond to numerous communications from Pioneer High School's activities director, did not comply with any steps required of official clubs, and did not initiate any communications with the club's faculty advisors.  Ex. 2 (Mayhew Decl.) ¶¶5-6, 10-12, 14, 16-17 & Ex. B, D thereto; Ex. 3 (Koring Decl.) ¶¶3, 8.
- In January 2023, when the activities director again reached out directly to N.M., N.M. stated that she did not think that Pioneer FCA wanted to be a club this year.  Ex. 2 (Mayhew Decl.) ¶13.  After the activities director followed up with an e-mail to N.M. and B.C., N.M. responded that although she had previously been unsure, Pioneer FCA now did want to be an official club, and the student said that she would send the activities director the names of the new club leaders since she did not want to lead the club herself.  *Id.* ¶¶15-16 & Ex. E, F thereto.  But N.M. never sent any names of new leaders to the activities director.  *Id.* ¶17.
- When one of the Pioneer FCA's faculty advisors reached out to N.M. in January 2023, N.M. explained that she and B.C. were seniors and were very busy, and that because the year was almost over it was not worth organizing the group or holding meetings.  Ex. 3 (Koring Decl.) ¶5.  N.M. stated that two juniors were interested in participating in the club but were not interested in leading it.  *Id.*  She subsequently told the faculty advisor that she and B.C. were not going to run the club this year but that another student wanted to do so.  *Id.* ¶6.
- When the faculty advisor then reached out to B.C., B.C. stated that she was unsure whether anyone would start the club this year.  *Id.* ¶7.

3

- N.M. apparently has said that the club will start meeting by the end of March, and another student recently expressed interest in starting to hold club meetings, but as of yet, Pioneer FCA has still not informed anyone who its new leaders are, nor has it held any meetings, almost seven months into the school year. Ex. 2 (Mayhew Decl.) ¶17; Ex. 3 (Koring Decl.) ¶¶8-9

If the Court grants Plaintiffs' motion to supplement the record, the above-described evidence should also be considered. This evidence supports Defendants' argument that Plaintiffs did not make a sufficient showing of standing to seek injunctive relief because they did not submit any evidence showing that students wanted to organize an FCA club for the 2022-2023 school year but were prevented from doing so by the requirement that they affirm compliance with the school district's all-comers/non-discrimination policy (waived for this school year after this Court's decision). Dkt. 59 at 20-28. While Plaintiffs had submitted speculative and conclusory declarations from an employee of the FCA National organization, they did not submit a single declaration from a student to demonstrate standing to seek injunctive relief. *Id.* The importance of that failing is highlighted by the fact that, although FCA National might have been able in late August 2022 to find two students willing to sign a club application for the 2022-2023 school year, those students did not actually organize an FCA club this year and have expressed their lack of interest in doing so going forward.

This discrepancy supports Defendants' position that any new evidence of events that took place after the district court's decision should be in the form of sworn testimony or declarations based on personal knowledge, and should be evaluated by the district court in the first instance. *Id.*; Dkt. 100 at 1-3. If, however, this Court were to deem post-judgment events relevant in these appellate proceedings to determine whether the district court abused its discretion, it should

4

then consider all the evidence, as the district court would do on a renewed motion for a preliminary injunction or in a trial on the merits.

**B.     Enforcement-related evidence**

In addition, if the Court accepts Plaintiffs' submission, it should also consider supplemental evidence showing that the school district's all-comers/nondiscrimination policy is being applied in a consistent and nondiscriminatory manner in the 2022-23 school year:

- The school district has adopted an automated system for club applications for the 2022-23 school year.  Ex. 2 (Mayhew Decl.) ¶8; Ex. 1 (McMahon Decl.) ¶4.  The application is standardized, and the system generates a mandatory, uniform club constitution.  Ex. 2 (Mayhew Decl.) ¶¶8-9 & Ex. C thereto; Ex. 1 (McMahon Decl.) ¶4.
- The constitution that all clubs must adopt establishes uniform membership requirements.  Ex. 2 (Mayhew Decl.) ¶8 & Ex. C thereto; Ex. 1 (McMahon Decl.) ¶4.  Under the uniform constitution, there are no eligibility requirements for membership or leadership other than being a current student.  *Id*.  Rather, students become members of the club by signing the club roster, and they lose their membership rights only at the end of the year (when a new cycle for student clubs begins for the 2023-2024 school year) or by failing to attend three consecutive meetings.  *Id*.  All club members are eligible to run for leadership positions.  *Id*.
- All student clubs must agree to comply with the school district's all-comers/nondiscrimination policy.  Ex. 2 (Mayhew Decl.) ¶¶8-9 & Ex. C thereto; Ex. 1 (McMahon Decl.) ¶¶4-5.
- The only student club in any District high school that was approved for the 2022-23 school year despite failing to complete the automated

5

application, adopt the standard constitution, or agree to comply with the school district's all-comers/nondiscrimination policy was Pioneer FCA. Ex. 1 (McMahon Decl.) ¶6.

This evidence shows that the school district's all-comers nondiscrimination policy is being applied in a consistent and nondiscriminatory manner to all clubs except for Pioneer FCA, which was not required to comply with the rules. The school district requires that *all* students be eligible for membership in any student club, and that *all* members be eligible to seek club leadership positions—except that, in response to this Court's August 2022 decision, the school district granted Pioneer FCA an exemption from the district's otherwise-applicable all-comers/nondiscrimination policy to allow that club to require students seeking leadership positions to agree to a pledge that excludes LGBTQ+ students. Ex. 4 (Levine Decl.) ¶¶2-4 & Ex. A-C thereto; Ex. 1 (McMahon Decl.) ¶¶3-5; Ex. 2 (Mayhew Decl. ¶¶3-4). If this Court were to affirm the district court's denial of a preliminary injunction, the school district would not change course for the current school year but would apply the policy uniformly to all student clubs in future school years. Ex. 1 (McMahon Decl.) ¶7.

The uniform and consistent application of the all-comers/nondiscrimination policy is relevant in two ways if this Court were to consider supplemental facts. First, what is relevant to Plaintiffs' request for going-forward injunctive relief are the school district's practices and policies for the current school year and thereafter, not its practices and policies in prior years. And the evidence demonstrates that there is no selective enforcement this school year of the school district's requirement that all students be eligible for membership and leadership, *except* for the exception granted to FCA after the issuance of this Court's opinion.

Second, the evidence highlights the reasons why, even if this Court were to reverse the district court's denial of a preliminary injunction, the case should be

6

remanded to the district court to determine an appropriate remedy. *See* Dkt. 93-1 at 13. Preliminary injunctive relief must be narrowly tailored, taking into account the specific facts and circumstances of the case. *See*, *e.g.*, *League of Wilderness Defenders/Blue Mountains Biodiversity Project v. Connaughton*, 752 F.3d 755, 767 (9th Cir. 2014); *see also Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017) ("a court need not grant the total relief sought by the applicant but may mold its decree to meet the exigencies of the particular case") (internal quotations omitted). In particular, the "remedial puzzle" presented by a selective enforcement case demands that "[t]he District Court, with its greater familiarity with the facts and the parties," determine what type of injunctive relief is appropriate to ensure content-neutral enforcement in the future. *Hoye v. City of Oakland*, 653 F.3d 835, 856-57 (9th Cir. 2011). Here, the district court is in the best position to consider the present circumstances and ensure that, going forward, all clubs are treated in a nondiscriminatory manner. *See* Dkt. 93-1 at 13; *Hoye*, 653 F.3d at 856-57.

## CONCLUSION

For these reasons, Defendants respectfully request that if the Court grants Plaintiffs' motion to supplement, this conditional cross-motion should likewise be granted.

Defendants requested Plaintiffs' position on this motion, and Plaintiffs have not yet responded with their position at the time of this filing.

Respectfully submitted,

Dated: March 1, 2023      By:      */s/ Stacey M. Leyton*
                                    Stacey M. Leyton

                                    Stephen P. Berzon
                                    Stacey M. Leyton
                                    Altshuler Berzon LLP

7

Amy R. Levine
Dannis Woliver Kelley

Richard B. Katskee
Kenneth D. Upton, Jr.
Americans United for Separation of Church and State

*Attorneys for Defendants-Appellees*

8